John Alan **TOMLINSON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 13892.

United States Court of Appeals
Ninth Circuit.

Sept. 15, 1954.

Harold Shire, Beverly Hills, Cal., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Laughlin E. Waters, U. S. Atty., Manley J. Bowler, Manuel L. Real, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

Tomlinson, convicted of refusing to be inducted in the armed forces of the United States, in violation of the Universal Military Training and Service Act, § 12, 50 U.S.C.A.Appendix, § 462, upon this appeal asserts that he should have had judgment of acquittal on the ground that the action of the boards which classified him was arbitrary and capricious, and that it was without basis in fact.

Tomlinson was placed in Class I-A-O, (conscientious objector available for non-combatant military service only). The points which he makes here relate to (1) his claim before the draft boards that he should be classified as a minister of religion, and (2) his claim that he should have been classified as a person conscientiously opposed to both combatant and non-combatant military service.

Tomlinson's argument with respect to his ministerial status is not that denial of such a classification was without basis in fact, rather it is that he was denied a full and fair hearing upon this point when he appeared before the local board. In this connection it is said that the

**14**

trial court erred in excluding relevant and material testimony offered for the purpose of showing that the local board thus refused him the hearing he was entitled to. As for the asserted rejection of offered testimony, it is noted that the appellant's brief wholly fails to comply with that portion of our Rule 18, subd. 2(d), which states the requirements for making a specification of error of this kind.[1] Nevertheless, we have examined the record in this connection.

Appellant says that he attempted to give evidence to show that when he appeared before the local board he was denied the right to discuss his classification and to point out material in the file which he believed the board had overlooked. He argues that he was denied the opportunity to introduce evidence to show that he sought in vain to submit new and additional evidence when he was before that board.

The selective service file discloses that registrant supplied the local board with voluminous written statements relating to his claims for exemption. He attached to his original questionnaire a closely typed letter, more than two pages in length, containing an extensive statement of his claim as to his ministerial status, his right to deferment because of some dependent sisters, and his conscientious objection. This was supplemented by literature from the Watchtower Bible and Tract Society. A few days later he filed his SSS Form 150 relating to his claims of conscientious objection. To this were attached an additional four and one-half page exposition of his views as to his ministerial and conscientious objector status, written statements of his parents, and of a certain "company servant" of the group of Jehovah's Witnesses of which he was a member. Following his personal appearance before the board and his continuance by the board in Class I-A, he appealed to the appeal board, accompanying his appeal with an additional closely typed three and one-half page letter making further statements and arguments in support of his appeal, and this in turn was accompanied by extensive printed material.

At the trial Tomlinson was shown the page of his file which contained the local board's minutes of his personal appearance before the board. He then testified as follows: "Q. By Mr. Shire: Mr. Tomlinson, will you state to the court anything that you stated to the board which does not appear in this record on page 35 of Exhibit 1? A. I attempted to answer one of their questions about, would I go into the Army and fight for the country? When I attempted to use the Bible, as soon as I opened it up, why, one of the board members said, 'Never mind what some man said about it. Let us hear what you have to say.' So then I said, 'This is God's word, the Bible, and this is what I base my beliefs upon.' And I asked them how they could classify me properly unless they knew what I based my beliefs upon. And I do not see that in here.

"Q. Was there anything else that you said to them that does not appear there? A. Yes. I explained to them that I have had a religious training and background and that I was qualified for a minister's classification. And I showed how that I had been raised as one of Jehovah's Witnesses and that I was ordained on July the 6th of 1941, and I even had paper clippings and things there with me at the time which I was unable to present because of their changing the subject and going into something else.

"Q. Is there anything else? A. I don't recall anything else right at the moment."

Thereafter the court inquired of the witness whether he furnished anything to the board which did not appear upon the board's minutes and the witness answered: "Well, I explained a little more

1. "When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found."

in detail than it has here, that I was in the position that Christ Jesus took when he was on the earth; that I considered those of my brothers were the ones who believed and had like faith, a faith like my own, because they asked me if I would fight to defend my family and my friends, and I said that I would, because I do believe in fighting and defending myself and friends and family, because they are of like faith."

His attention was then called to his four page letter to the appeal board and the following occurred:

"The Court: My question is this: Is there any information which you furnished the local board at the personal appearance hearing which is not embraced in your letter to the appeal board, which pages you have last identified in Exhibit 1? Do you understand my question?

"The Witness: I believe I do.

"The Court: In other words did you give the local board anything that you did not cover in your letter, which we have identified here, to the appeal board?

"The Witness: Well, I have not read this appeal letter for a little while and I wouldn't be able to say exactly."

This was the end of his testimony with respect to what he furnished or attempted to furnish the local board and there is no further proof or offer of proof upon this subject.

██ We find no basis whatever for any contention that the court excluded any offered testimony in respect to appellant's claim that the local board denied him a full and fair hearing. There is also absent from the record anything to indicate that the local board did in fact unfairly or unduly restrict or limit presentation upon his personal appearance before it. What happened here is almost precisely what happened to the registrant in Martin v. United States, 4 Cir., 190 F.2d 775, 778, in which the court held

that the registrant could not complain because the board stopped him from reading passages from the Bible when the whole matter was fully covered by his letters.

An effort is made to show that appellant's opportunity for a full hearing before the local board was limited in another respect. This contention is based upon a portion of the minutes of the local board relating to appellant's appearance there on November 20, 1950, reading as follows: "Registrant presented facts of religious training, and belief. States that he is a Minister, but the Local Board feels that he does not qualify for such a classification, inasmuch as there has been no Theological training in a school, or background which would make him a minister. They feel that a Minister is one who has a regular following, and is Ordained." Placing his emphasis entirely upon that portion of the foregoing minute entry which refers to "no theological training in a school" and to the word "ordained", registrant says that this discloses that the board, in disregard of the law, manufactured its own definition of minister of religion. The effect of this, he says, was to deny him a hearing upon this issue. Says appellant: "The contention here is not that the ministerial claim was denied without basis in fact. It is that appellant has been denied his rights to a full and fair hearing upon his personal appearance." If the statement of the local board had no meaning other than that the board was requiring a showing of theological training in a school, or that a minister must necessarily be ordained, we would have little difficulty, if that question were before us in concluding that the local board's statement was incorrect as a statement of law.[2]

However, the board's minute entry is not susceptible of an interpretation that the board regarded theological training in a school as a necessary prerequisite

---

2. The Regulations, Title 32, (now Sec. 1622.43), recognize that a minister of religion entitled to exemption may be either a "regular minister of religion", or a

"duly ordained minister of religion". Neither the statute nor the Regulations make any requirement of theological or school training.

for a minister. In substance, what the local board says was that there had been *neither* theological training in a school *nor* background which would make him a minister. The board further referred to his lack of a "regular following".[3]

■ True, the reference to ordination was incorrect, but any error which the local board may have made in this respect was precisely the sort of thing which the appeal board was set up to correct. Here the whole record went to the appeal board, along with Tomlinson's four page letter to that board. In that letter he dealt with the precise question, quoting the statements made by General Hershey concerning the position of Jehovah's Witnesses as recognized ministers and enclosing printed material containing the same quotations. If the local board erred in its use of the word "ordained", such error was cured by the action of the appeal board under the rule of Cramer v. France, 9 Cir., 148 F.2d 801; Tyrrell v. United States, 9 Cir., 200 F.2d 8; and Reed v. United States, 9 Cir., 205 F.2d 216.

■ Another contention is that at the time of his personal appearance before the hearing officer after his case had been appealed to the appeal board, the officer failed and refused to give appellant a full and fair summary of the FBI investigative report concerning him. This contention has no basis in the record. An attempt is made to argue that there must have been adverse and unfavorable evidence appearing in the FBI file for the reason that the hearing officer made a recommendation that Tomlinson be placed in a I-A-O classification thus declining to recommend the I-O or the full conscientious objector classification.

The record of the hearing officer furnishes no support for such a contention. That officer's report would indicate that it was based upon the officer's questioning of the registrant himself. There is nothing to show that the hearing officer drew any conclusions from an FBI report. Such a report is not mentioned. The hearing officer's report bears internal evidence, when compared with the registrant's own statements to the local board and to the appeal board, that its conclusions are drawn from what the registrant told the hearing officer. The hearing officer was called as a witness for the defendant. He testified that he had no recollection of appellant's hearing or appearance before him. As hearing officer he had held many hearings with respect to numerous registrants. His testimony amounted to saying that he assumed that the hearing of Tomlinson proceeded in the usual manner; that he usually gave to such registrants information from the FBI reports which were adverse to them providing the registrant asked for it; he did not remember whether this registrant made such a request or whether he asked to see the report. The witness testified that he had no particular recollection of this case.

■ It is asserted that the court below committed error in refusing to receive in evidence the FBI report which was furnished to the hearing officer.

3. In essence what the board said was that it rejected registrant's claim to be a minister. That the board, presumably composed of laymen, did not use the most apt language to evidence this disapproval, does not alter the essential character of its ruling. Indeed, the registrant's showing of a ministerial status was wanting in substance. His showing was to the effect that he was ordained at a public ordination ceremony on July 6, 1941. This was confirmed in a letter from his parents. On that date the registrant was not yet ten years of age. His letters to the Board specified in minute detail the extent, nature and character of his religious work. In general, his showing was that he spent his evenings in Bible study, in visiting intended converts, and "on the street corners of Inglewood". He made no showing that he was a shepherd of any flock. On the other hand, he appears to have been a member of a group led by one Halvajian described as a "company servant" of the congregation known as the Inglewood company. The registrant held a full time job at a bakery. On the whole, the showing was far less persuasive than that made by Hagaman in United States v. Hagaman, 3 Cir., 213 F.2d 86, 92–93.

This is the same contention which was made on behalf of the appellant in the case of White v. United States, 9 Cir., 215 F.2d 782. For the reasons therein stated we hold that the contention thus made here is without merit.

Finally it is contended that there was no basis in fact for the classification which this appellant was given. The local board classified him I-A. Upon his appeal the board of appeals determined that appellant was not entitled to a classification as a conscientious objector, and his file was forwarded to the Department of Justice in the usual manner. The hearing officer after a hearing which was attended personally by the appellant recommended that Tomlinson be placed in Class I-A-O. This is where the appeal board placed him. When he was ordered inducted into the armed forces for the limited service thus called for, he refused to submit and this prosecution followed.

Appellant assumes the position that the record before the appeal board permits nothing except a I-O classification, that is, classification as a person conscientiously opposed both to combatant and noncombatant service. The contention is that the appeal board in concluding that the registrant belonged in Class I-A-O, that is to say, a class made up of persons available for noncombatant service, acted without basis in fact.

We note here that the board found that registrant was in fact a conscientious objector. It is evident that the board raised the question: conscientious objector to what? In White v. United States, supra, this court had occasion to point out that a draft board having to do with a claim of conscientious objection, is necessarily called upon to evaluate a mental attitude and a belief. A board or body called upon to determine to what extent and how far an individual's conscientious objections go, may well have great difficulty in coming to a conclusion. Surely the

board is not concluded by the mere assertion of the registrant. Attitudes and demeanors which develop at the time of such a person's personal appearance may well be the controlling factors. In this instance it is plain that the appeal board's conclusion was based primarily upon the report of the hearing officer. Such a report may furnish the basis in fact which supports the board's action. Kent v. United States, 9 Cir., 207 F.2d 234, 237; Roberson v. United States, 10 Cir., 208 F.2d 166, 169. Its conclusions may also have been based in part upon that portion of the registrant's file which was transmitted with the appeal.

As we have previously indicated, the hearing officer's report is apparently based upon information obtained by that officer at the time the registrant appeared before him. The officer summarized the information thus obtained as follows: "Of course like all other Jehovah's Witnesses he believes that wars are contrary to God's wishes and he believes God's laws should take precedence over man's laws. His contention is that although he is a member of Jehovah's Witnesses and they are in this world, they are nevertheless entirely separate and apart from it. They are here to do ministerial work in carrying the message of Christ, and if he were taken away from this work to serve in the armed forces, the work of carrying the message would be hindered.

"Registrant had a witness with him by the name of Halvajianie Shield, who is also a member of Jehovah's Witnesses. He is also a conscientious objector and served a sentence for not complying with the rulings of his draft board.

"Registrant helps support his family, insists that he would not kill, and that his mother, father and sisters are all members of Jehovah's Witnesses."

This summary reflects the registrant's general attitude as expressed in his letters.[4]

4. The letter attached to his conscientious objector Form 150 stated registrant's views at great length. It may be summarized as follows: first, a demonstra-

■ The appeal board may well have been of the view that this registrant is primarily an objector who will have nothing to do with the affairs "of this world". True he is conscientiously opposed to killing; but his real objection to noncombatant service would appear to be its interfering with his carrying the "message" and doing what he chose to call "ministerial work". We think that in drawing the line where it did, it cannot be said that the appeal board acted without basis in fact.[5] The board could well understand from appellant's representations that his objections would include such tasks for a government of "this world" as fighting forest fires or building roads. An objection, on religious grounds, to any assignment which would take the registrant away from his missionary activities, is not an objection which the Act recognizes.

The judgment is affirmed.

tion from Scripture and otherwise that there is a God; next, a similar demonstration that there is a Devil; a statement that "this world" is ruled by the devil, and a Christian cannot be a "part of this world"; so I am neutral as to all wars waged by the nations of this world; "While I object to participation in combatant and noncombatant service I do not object to the nations of this world in carrying on wars"; that is their right. "Nevertheless I must obey God rather than man and I quote Acts 5:29 'We ought to obey God rather than men.'" "Since no man can give life he also does not have the right to take life unless he acts in harmony with God's word; He says at Exodus 20:13 'Thou shalt not kill.'" "Even if I kill a person who did not believe the same as I, or maybe even in God, I would be breaking God's everlasting covenant." The letter followed with an exposition of the proposition that registrant was not a pacifist because he believed in theocratic wars and it concluded with a reassertion of his claim of ministerial status. In his letter to the appeal board, registrant repeated these views saying: "I believe in a Supreme Being and that to serve Him involves duties that are superior to those arising from any human relation. Jehovah God's laws state that it is wrong to kill and for that reason I cannot take part in combatant or noncombatant training and service." He followed this with numerous quotations from the Scriptures to the effect "Thou shalt not kill", etc.

5. According to the Board's minutes Tomlinson told the local board at the time of his personal appearance that he would defend his home or his family even to the point of killing. In his letter attached to his form 150 he expressed the view that theocratic wars had biblical approval and also there said: "If a person attempts to harm me or my spiritual brothers and sisters I have the perfect right to defend myself and said spiritual brothers and sisters in behalf of the upholding of God's government." In a supplemental brief the government contends that one who believes in theocratic wars or one who believes in the use of force to defend himself and family cannot be a conscientious objector because he is not opposed to "participation in war in any form". This argument has been rejected in a number of cases including Taffs v. United States, 8 Cir., 208 F.2d 329, United States v. Hartman, 2 Cir., 209 F.2d 366; Annett v. United States, 10 Cir., 205 F.2d 689. In reaching our conclusions here we have not taken into consideration these statements of the appellant, and have disregarded the arguments of the government referred to in this note.