**UNITED STATES of America**

v.

**Norman Augustus QUERENGASSER.**

**Crim. No. 13063.**

United States District Court
M. D. Pennsylvania.
May 18, 1960.

Daniel H. Jenkins, U. S. Atty., James S. Palermo, Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Charles W. Kalp, Lewisburg, Pa., for defendant.

FOLLMER, District Judge.

Defendant, Norman Augustus Querengasser, has been indicted for refusal to be inducted into the Armed Forces of the United States in violation of 50 U.S.C.A. Appendix, §§ 451–470. Defendant entered a plea of not guilty and waived his right to trial by jury. The case was accordingly tried to the Court without a jury.

At the trial the Government produced the file of Local Board No. 153, Pottsville, Pennsylvania, being the complete file in relation to this defendant. An examination of the file reveals that registrant (defendant) answered the Selective Service System Classification Questionnaire, which was received and filed by his Local Board on March 28, 1952. In the questionnaire registrant stated that he was a minister of religion of the Jehovah's Witnesses Sect and had been such since March 12, 1950, and that he was regularly serving as a minister. He stated that he had been formally ordained March 12, 1950, that he is a student preparing for the ministry under the direction of Watchtower Bible & Tract Society and is attending the Theocratic Ministry School at Pottsville, Pennsylvania. He stated that he was then and had been for one-half year employed as a door listing draftsman by Aetna Steel Products Corporation, Pottsville, Pennsylvania, working forty-five hours per week at the rate of $40 per week. He furthermore stated, "In view of the facts set forth in this questionnaire it is my opinion that my classification should be Class IV–D." He requested and was furnished Special Form for Conscientious Objector (SSS Form No. 150) which he partially completed, signed the certificate, and returned to the Board on April 2, 1952. He did not sign either (A) or (B) in Series I.—Claim for Exemption, indicating the degree of his objection to service.

Registrant did attach an extra sheet in which he explained his failure to sign either (A) or (B) under Series I.—Claim for Exemption, as follows:

"The foregoing is the reason for my not signing statements A or B Series 1:

"Due to my religious training and belief I cannot sign either statement. To sign such would incur upon my obligations to Jehovah God.

"I am certainly not apposed (sic) to the national safety and health of the citizens. But I sincerely believe in the safety, health and welfare of every person and this I am already engaging in by my ministerial activities.

"This includes such things as contributing to the spiritual needs of the people, visiting the sick and needy, going to their homes personally and helping them to improve their living standards morally."

On March 18, 1953, registrant was classified I–A and was so notified by the Board March 19, 1953, on SSS Form No. 110.

At his request, registrant was granted an appearance before the Board on May 13, 1953, at which time he presented additional material for his file. Following his appearance before the Board, registrant's classification was again considered and he was again placed in Class I–A on June 17, 1953, and notice thereof was forwarded to registrant on June 22, 1953.

On June 30, 1953, registrant appealed from the classification of the Local Board. Accordingly, the file was forwarded to the Appeal Board on July 2, 1953, from whence the entire file was forwarded to the Department of Justice for an advisory recommendation.

At the hearing before the Hearing Officer registrant indicated that he would continue to work at his job with the Aetna Steel Products Corporation even if the company were manufacturing armaments for the Government. The Department of Justice then, on July 21, 1954, returned the case to the Appeal Board, holding that registrant's objections are sustained as to combatant training only and recommending that he be classified I–A–O because of his willingness to engage in employment connected with the national defense. On July 29, 1954, the Appeal Board classified registrant in Class I–A–O.

On April 20, 1955, the Local Board reopened registrant's classification in accordance with Paragraph 3(b) of Selective Service System National Headquarters Operation Bulletin No. 123. He was again placed in Class I–A and so notified. At his request, he was granted a personal appearance by the Local Board on May 18, 1955, when after consideration he was placed in Class I–A and so notified on May 26, 1955.

Registrant appealed and the file was forwarded to the Appeal Board. He was then furnished with a copy of the letter of recommendation received from the Department of Justice on July 22, 1954. On August 5, 1955, the Appeal Board again classified registrant in Class I–A–O.

On September 8, 1955, the Appeal Board rescinded its classification of August 5, 1955, and on September 13, 1955, transmitted the file to the Department of Justice for a new advisory recommendation. Following a second investigation and hearing, the Department of Justice returned the file to the Appeal Board with its recommendation of May 10, 1956, that registrant be classified in Class I–A–O. Copy of this recommendation was forwarded registrant on May 16, 1956.

On July 11, 1956, the Appeal Board for the Eastern Federal Judicial District, Philadelphia, Pennsylvania, by a vote of 4 to 0 placed registrant in Class I–A–O and he was so notified on July 25, 1956.

On September 4, 1956, registrant was mailed his Order to Report for Induction, SSS Form No. 252, which ordered him to report to the Local Board on September 14, 1956, for forwarding to the induction station. Registrant reported to the Local Board as directed on September 14, 1956, thence to the induction center, where, after undergoing preliminary processing, he refused to submit to induction.

While not requesting any specific classification in SSS Form No. 150 (Special Form for Conscientious Objector), he did in his appearances before the Board and in various communications state that he was requesting a IV–D classification. This claim was not pressed at the trial. On the other hand, both at the trial and in his brief registrant argued as follows:

"There is nothing in the file to indicate that Querengasser was willing to do noncombatant military service and therefore the final recommendation of the Department of Justice is arbitrary and capricious. Either he was entitled to the I–O classification, or he should have been classified I–A."

The Department of Justice in its letter of July 21, 1954, addressed to the

Chairman, Appeal Board, Eastern District of Pennsylvania, quoted at length from the report of the Hearing Officer, which stated, inter alia, as follows:

"Registrant told the Hearing Officer that he was unmarried, and that he resided with his parents. He said that he had one brother of draft age who was also a conscientious objector. He explained that he had been employed since 1951 as a lay out man by the Aetna Steel Products Corporation in Pottsville, and that he worked a forty-hour week, being paid at the rate of approximately $57.50 a week. He said that the company manufactured hollow metal doors, jambs and trim for all types of buildings. He was aware that his company did some work for the Government, although he did not believe it had any direct connection with the defense effort. Under questioning by the Hearing Officer, however, registrant admitted that he would continue to work at his present job even if the company were manufacturing armaments for the Government. In explanation of this he declared that in his opinion any job contributes to the war effort and that since he has to earn a living, he would be willing to work even in defense industries. The registrant further stated that since he did not pull the trigger on a gun, any part which he might make, even for a gun, would be insignificant."

The Hearing Officer determined that registrant was sincerely opposed to the bearing of arms in conflict by reason of religious training and belief. He concluded, however, that registrant's willingness to engage in employment connected with the defense effort was inconsistent with a professed religious objection to service in the armed forces in a noncombatant capacity and accordingly recommended a I–A–O classification. The Department of Justice concurred in the recommendation of the Hearing Officer and in turn recommended to the Appeal Board that registrant be classified in Class I–A–O.

Following registrant's appearance before a second Hearing Officer and the referral above mentioned, the Department of Justice in its letter of May 10, 1956, to the Chairman, Appeal Board, Eastern District of Pennsylvania, quoted at length from the report of the Hearing Officer and attached thereto a résumé of the supplemental inquiry. The letter indicated that the Hearing Officer had concluded registrant is conscientiously opposed to combatant and noncombatant military training and service and recommended that registrant be classified I–O. The letter then quoted from registrant's letter of July 13, 1955, to the Appeal Board in which he stated, inter alia, "my ordination as a minister demands my conscientious objection to non-combatant (sic) service so as to be free to perform my ministerial vows." The letter then stated:

"It will be noticed that the registrant's principal objection as expressed to the Appeal Board in this letter is that the contribution to the defense effort in his employment is indirect and that his conscientious objection to noncombatant service is demanded by his ordination as a minister 'so as to be free to perform my ministerial vows.' An objection on religious grounds to any assignment which would take the registrant away from his ministerial activity is not an objection which the Act recognizes. Tomlinson v. U. S., [9 Cir.], 216 F.2d 12, cert[iorari] denied, 348 U.S. 970 [75 S.Ct. 528, 99 L.Ed. 755]. In his former hearing the registrant, told the Hearing Officer that he would continue to work at his job in the Aetna Steel Products Corporation at Pottsville, even if the company were manufacturing armaments for the Government and in explanation of his stand, he stated that any job contributes to the war effort and that since he has to earn a living, he would be willing to work even in defense industries. If the registrant's conscience was not bothered while working on war contracts, he could not

justly claim he was conscientiously opposed to noncombatant participation in war activities. White v. U. S. [9 Cir.], 215 F.2d 782, cert[iorari] denied, 347 U.S. 970 [75 S.Ct. 528, 99 L.Ed. 755].

"With due regard to the determination of the Hearing Officer, therefore, the Department of Justice concludes that the registrant is conscientiously opposed to participation in combatant military training and service but is not conscientiously opposed to participation in noncombatant military training and service and recommends to your Board that the registrant be classified I–A–O."

On July 11, 1956, the Appeal Board by a vote of 4–0 classified registrant I–A–O.

■ I find nothing arbitrary or capricious in this recommendation or in the ultimate classification in accordance therewith. In my opinion, there was ample evidence before the Appeal Board on which the classification of I–A–O could be based. Accordingly, this Court is powerless to consider de novo the matter of classification.[1]

In Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 120, 92 L.Ed. 59, the Supreme Court stated:

" * * * Perhaps a court or jury would reach a different result from the evidence but as the determination of classification is for selective service, its order is reviewable 'only if there is no basis in fact for the classification.' * * * Consequently when a court finds a basis in the file for the board's action that action is conclusive. The question of the preponderance of evidence is not for trial anew. It is not relevant to the issue of the guilt of the accused for disobedience of orders. * * * "

Again in Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428, the Court stated:

"The primary question here is whether, under the facts of this case, the narrow scope of review given this Court permits us to overturn the Selective Service System's refusal to grant petitioner conscientious objector status. It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 1953, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132. The classification can be overturned only if it has 'no basis in fact.' "

■ There was no procedural error in the action of the Appeal Board following the recommendation of the Department of Justice even though such action did not follow the recommendation of the Hearing Officer. It is the Board who determines the classification.[2]

Registrant contends that only about ten per cent. of the products of the company for which he works reaches agencies of the Government which in turn are engaged in the manufacture of munitions of war. On the other hand, in the Department of Justice letter of July 21, 1954, it is stated that under questioning by the Hearing Officer registrant admitted that he would continue to work at his present job even if the company were manufacturing armaments for the Government.

■■ As stated above, while registrant did indicate in his questionnaire that he was entitled to a IV–D (ministerial) classification, he did not press it at the trial. In my opinion, there certainly is nothing in the record to justify that classification. There can be no question but that registrant had the burden of establishing his claim for exemption on the ground that he was a conscientious objector and the members of the Local Board were not bound to believe his

1. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567.

2. United States v. Neverline, 3 Cir., 1959, 266 F.2d 180.

statements as to his conscientious objections.[3]

As to this matter of proof, in United States v. Simmons, 7 Cir., 1954, 213 F. 2d 901, 904, the Court said:

"* * * a distinction must be drawn, we believe, between a claim of ministerial status and a claim of conscientious objection status as to susceptibility of proof. Whether a registrant is a minister in the statutory sense, having as his principal vocation the leadership of and ministering to the followers of his creed, is a factual question susceptible of exact proof by evidence as to his status within the sect and his daily activities. No search of his conscience is required. Even though the only tenet of his cult be a belief in war and bloodshed, he still would be exempt from military service if he were, in fact, a minister of religion. Is he affiliated with a religious sect? Does he, as his vocation, represent that sect as a leader ministering to its followers? These questions are determinative and subject to exact proof or disproof.

"The conscientious objector claim admits of no such exact proof. Probing a man's conscience is, at best, a speculative venture. No one, not even his closest friends and associates, can testify to a certainty as to what he believes and feels. These, at most, can only express their opinions as to his sincerity. The best evidence on this question may well be, not the man's statements or those of other witnesses, but his credibility and demeanor in a personal appearance before the fact-finding agency. We cannot presume that a particular classification is based on the board's disbelief of the registrant, but, just as surely, the statutory scheme will not permit us to burden the board with the impossible task of rebutting a presumption of the validity of every claim based ofttimes on little more than the registrant's statement that he is conscientiously opposed to participation in war. When the record discloses any evidence of whatever nature which is incompatible with the claim of exemption we may not inquire further as to the correctness of the board's order."

In White v. United States, 9 Cir., 1954, 215 F.2d 782, 786, the Court said:

"In view of his experiencing no difficulty working upon the manufacture of munitions for war, the board was not without justification in concluding that White had no conscientious objection to participation in war through the manufacture of arms and munitions, just so long as he did so for a private company and not for the government. It was therefore but natural for the boards to believe that if the registrant's conscience was not bothered while working on war contracts he could not justly claim he was conscientiously opposed to noncombatant participation in war activities and that his mere objection to wearing a uniform because it marked him as one working for the government was not the kind of objection contemplated by the statute. Objection to serving a country, even on religious grounds, is not the standard under the statute. The registrant's facility in forwarding the cause of war, force and killing through activity in a war plant, may well demonstrate his failure to establish his status as a person conscientiously opposed to noncombatant duty."

■ Objection, on religious grounds, to any assignment which would take registrant away from missionary activities, is not recognized by Selective Service Act.[4]

---

3. Gaston v. United States, 4 Cir., 1955, 222 F.2d 818.

4. Tomlinson v. United States, 9 Cir., 1954, 216 F.2d 12, 18; Leifer v. United States, 6 Cir., 1959, 260 F.2d 648.

In order to set aside a selective service classification, a court must find that there is no basis in fact for the classification.[5]

I conclude that in this case there was a clear basis in fact for the classification given defendant by the Appeal Board of I–A–O available for noncombatant military service rather than I–O as a person conscientiously opposed to military service of any kind. On the whole record the Court is of the opinion that beyond a reasonable doubt the defendant is guilty of violation of 50 U.S.C.Appendix, § 462.

---

5. Rogers v. United States, 9 Cir., 1959, 263 F.2d 283, certiorari denied 359 U.S. 967, 79 S.Ct. 878, 3 L.Ed.2d 834 (citing Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59.