**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Jerry Paul BRYANT, Defendant.**

**No. FS-68-CR-33.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Nov. 27, 1968.

James A. Gutensohn, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

James A. King, Jr., of Bethell, Stocks, Callaway & King, Ft. Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

On August 29, 1968, the Grand Jury for the Western District of Arkansas returned an indictment against the defendant, Jerry Paul Bryant, charging him with a violation of 50 App. U.S.C.A. § 462 (Selective Service Act of 1967) in that he unlawfully, willfully and knowingly failed and neglected to perform a duty required of him under the Act, and that he neglected to comply with an order of the Local Board to submit to induction into the armed forces of the United States.

With the consent of the court, the parties waived trial by jury, and the case was tried to the court on October 28, 1968. The defendant appeared in person and by his court-appointed attorney, James A. King, Jr. The Government appeared by its counsel, James A. Guten-

sohn, Assistant U. S. Attorney for the Western District of Arkansas.

Upon arraignment the defendant entered a plea of not guilty to the charge contained in the indictment, and contended then and now contends that, by reason of his religious training and belief, he is conscientiously opposed to participation in war in any form and is conscientiously opposed to participation in noncombatant training and service in the armed forces.

In determining the question of the guilt or innocence of the defendant as charged, the court must consider with care the entire record to determine whether the conclusion of the Board has any "basis in fact."

The scope of judicial review of local draft board decisions is extremely narrow. The Selective Service Act provides that decisions of local boards are final. 50 App. U.S.C.A., § 460(b)(3). In Estep v. United States, (1964) 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L. Ed. 567, the Supreme Court said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

In Blalock v. United States, (4th Cir. 1957) 247 F.2d 615, 619, the court said:

"The 'clearly erroneous' rule applied in equity appeals has no place here, nor even the 'substantial evidence' rule of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Congress gave the courts no general authority of revision over draft board proceedings, and we

have authority to reverse only if there is a denial of basic procedural fairness or if the conclusion of the board is without any basis in fact. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Goff v. U. S., 4 Cir., 135 F.2d 610."

See, also, DeRemer v. United States, (8 Cir. 1965) 340 F.2d 712, 715.

The Selective Service file of the defendant was introduced in evidence and discloses the following facts:

Jerry Paul Bryant, born January 1, 1947, is a member of the Church of Christ in Booneville, Arkansas. On February 10, 1965, Arkansas Local Board No. 42 of the Selective Service System, located in Paris, Arkansas, mailed the defendant SSS Form No. 100 (Classification Questionnaire), which was completed and returned to the Local Board on February 17, 1965. The defendant therein indicated that he was currently enrolled in Booneville High School and requested the Local Board to furnish him a Special Form for Conscientious Objectors (SSS Form No. 150). That form was mailed to the defendant on March 29, 1965, and returned to the Local Board on April 5, 1965. The relevant information contained therein is as follows:

Series I.—CLAIM FOR EXEMPTION

INSTRUCTIONS.—The registrant must sign his name to either statement A or statement B in this series but not to both of them. The registrant should strike out the statement in this series which he does not sign.

(A) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form. I, therefore, claim exemption from combatant training and service in the Armed Forces.

```
------------------------------------------------
 (Signature of registrant)
```

(B) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces.

```
 /s/ Jerry Paul Bryant
------------------------------------------------
 (Signature of registrant)
```

Under the provisions of section 6 (j) of the Universal Military Training and Service Act, as amended, any person who claims exemption from combatant training and service in the Armed Forces of the United States because he is, by reason of religious training and belief, conscientiously opposed to participation in war in any form and such claim is sustained by the local board, shall, if he is inducted into the Armed Forces, be assigned to noncombatant service as defined by the President, or shall, if found to be conscientiously opposed to participation in such noncombatant service, in lieu of induction, be ordered by his local board, subject to regulations prescribed by the President, to perform for a period of twenty-four consecutive months such civilian work contributing to the maintenance of the national health, safety, or interest as the local board deems appropriate, and any such person who fails or neglects to obey such order of the local board shall be subject to imprisonment for not more than five years or a fine of not more than $10,000, or to both such fine and imprisonment.

Series II.—RELIGIOUS TRAINING AND BELIEF

INSTRUCTIONS.—Every item in this series must be completed. If more space is needed use extra sheets of paper.

1. Do you believe in a Supreme Being? ☒ Yes ☐ No

2. Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation.

The reason for my believing there is a Supreme Being. In Genesis Chapter one declares the hand work of God. The heavens the earth and the things therein were made by him. Without him nothing could have been made. St. John Chapter 1:3. God made man in his own image or likeness. Genesis Chapter 1:26-27. No human could create these things. In the New Testment we read where God gives life and breath to all things. It also states "In God we move live and have our being." Act 17:25-28. So I then believe that these scriptures has showed there is a Supreme Being, and that I should follow his sayings rather than those arising from any human relation.

3. Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above.

I would say that I first acquired the training for my belief which is the basis of my claim. I would say my first training was in the home by my parents. When I was of the age of knowing right from wrong they began to teach me from the scriptures the things that I should not do. Then after I began to understand the scriptures by my own reading I saw that the things that had taught were the truth. So I would say that my parents and the Bible gave me my training and belief which is the basis of my claim.

4. Give the name and present address of the individual upon whom you rely most for religious guidance.
George W. Bryant Father 111 Railroad Ave. Booneville
Lillie O. Bryant Mother 111 Railroad Ave. Booneville

5. Under what circumstances, if any, do you believe in the use of force?
I believe that the use of force could be used in the saving of lives instead of taking lives.

6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.
I try not to violate the laws of the land. I try to keep my life as clean as possible before my fellow man and the Church.

7. Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim made in Series I above? If so, specify when and where.
I have discussed with a few people in the home the basis for my claim. Not too long ago I mentioned subject to Mr. and Mrs. Richard Taylor and Son, also in my home.

\* \* \* \*

### Series IV.—PARTICIPATION IN ORGANIZATIONS
INSTRUCTIONS.—Every item in this series must be completed. If more space is needed use extra sheets of paper.

\* \* \* \*

2. Are you a member of a religious sect or organization? ☒ Yes ☐ No. If your reply to item 2 is "yes," complete items (a) through (e).
(a) State the name of the sect, and the name and location of its governing body or head if known to you.

I am a member of a spiritual body know as the Church of Christ (Romans 16:16). Its starting place was in Jerusalim (Luke 24:49, Acts 1:4, Acts 2:47). The head of its governing body is in heaven. Christ is the head (Ephesians 5:23), (Colossians 1:18).

(ω) When, where, and how did you become a member of said sect or organization?

I became a member of the Church of Christ in the fall of 1961 in Booneville, Arkansas. I was first taught the truth by my parents in my early child hood, I believed what I heard taught by my parents and at church. To believe is to have faith. "But without faith it is impossible to please him." (Hebrews 11:6). I was then taught to repent, "I tell you Nay; but, except ye repent, ye shall all likewise perish." (Luke 13:3). Then I was taught to confess with my mouth that Jesus Christ was the son of God (Romans 10:9:10). "Whosoever shall confess me before men him shall I confess before my father which is in Heaven, but whosoever shall deny me before men, him will I also deny before my Father which is in heaven." (Matt. 10:32:33). With these Bible Command-ments obeyed I was baptized in water for the remission of my sins (Acts 2:38). In this last act of obedience I was added to the Church by the Lord Jesus Christ "to his Church" (Acts 2:45).

* * * *

() Describe carefully the creed or official statements of said religious sect or organization in relation to participation in war.

Some thoughts as to why I conscientiously cannot participate in the armed forces in noncombatant or combatant services. (1) To take up arms is a vilotation to God's word. I give here the Bible quotation as follows. The Christian arms is a spiritual weapon the sword is the word of God. (Ephesians 6:17). This weapon is used to save, not to destroy. The Bible says thou shall not kill. The Lord says love your enemies, bless them that curse you, do good to them that hate you, and pray for them which despitefully use you, and persecute you (Matthew 5:44). Therefore to take up armes would violate the word of God, and also my conscience. I read in the Bible in Acts of the Apostles Chapter 5 verse 29 that we must obey God rather than man. (2) To enter the noncombatant service would place upon me something that I cannot do and that is to take an oath. Which I am forbidden to do (Matt. 5:34). The Lord says swear not at all. It would place me in a position with sinful envorment. It also would destroy my faithful service to the Lord and his Church on the Lord's Day, to commune at the Lord's table of eating of the bread and drinking of the fruit of the vine which is his body and his blood.

On May 19, 1965, the defendant was classified I-S-H by the Local Board because of his current high school enrollment. On August 12, 1965, the defendant was reclassified I-A-O.[1]

On August 18, 1965, the defendant filed with the Local Board a request for an appeal from his I-A-O classification. He therein reaffirmed his opposition to war in any form and requested a I-O

1. The various classifications for selective service registrants are set forth and explained in 32 C.F.R., Chapter XVI, Part 1622. The following are the provisions pertinent to the case at bar:

"§ 1622.11 Class I-A-O: Conscientious objector available for noncombatant military service only.
"(a) In class I-A-O shall be placed every registrant who would have been

classification. On the same date he requested an occupational deferment to attend Petit Jean Vocational School. On September 15, 1965, the defendant was reclassified II-S (student deferment) by the Local Board, and he chose not to pursue the appeal from the I-A-O classification of August 12, 1965.

On August 30, 1966, George W. Bryant, defendant's father, informed the Local Board that his son was no longer attending school, and the defendant was reclassified I-A-O on September 7, 1966. The defendant filed a timely appeal on September 12, 1966, and his Selective Service file was duly transmitted to the Appeal Board for the Western Judicial District of Arkansas. In a letter addressed to Arkansas Local Board No. 42, which was subsequently made a part of his Selective Service file, defendant summarized his case on appeal as follows:

"I believe my claim should and will be given Justice and rightous judgment. I believe it will be given if the word of God is considered. I have been taught from my early child hood to respect and obey what God has said,

therefore I cannot and must not refuse to worship God. God said if ye love me keep my commandments, and to keep his commandment is to faithfully serve him. I cannot worship him in any other name or Institution. In Acts Chapter 4:11–12 There is no salvation in any other name under Heaven given among men whereby we must be saved. I cannot let the things of the world separate me from the love of God. Romans Chapter 8:38–39 the body of Christ is the Church of Christ. Ephesians 1:22–23 Col. 1:18 The Lord teaches us to not forsake the assembly of ourselves together. So when the Lords Day comes I must be there to take part in the Lord works, to paretake of the Lord Supper as is taught in I Corinthians the 11 Chapter verses 23–29. This is done to remember the Lord.

"I love my country, but I love the Lord and his Church more. I believe that when my claim has been righteously studied and in keeping with what the federal government has supplied me to base my claim from the Bible.

classified in Class I–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to combatant training and service in the armed forces.

"§ 1622.14 Class I–O: Conscientious objector available for civilian work contributing to the maintenance of the national health, safety, or interest.

"(a) In class I–O shall be placed every registrant who would have been classified in Class I–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces."

* * * * *

The Military Selective Service Act of 1967, 50 App. U.S.C.A. § 456(j), provides in part as follows:

"(j) Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forc-

es of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title * * * be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed * * * such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate * * *."

"I will have to be as I Corinthians 15:58 states 'therefore, my beloved brethren, be ye *stedfast, unmoveable,* [emphasis his] always abounding in the work of the Lord, foreasmuch as ye know that your labour is not in vain in the Lord.'"

On November 4, 1966, the Appeal Board tentatively determined that the defendant was not entitled to classification in Class I-O or in a lower class. The defendant's file was then transmitted to the Department of Justice for the purpose of securing an advisory recommendation in accordance with Selective Service regulations then in effect.[2]

The above regulation was based upon the Act of June 24, 1948, as amended by the Act of June 19, 1951, 50 U.S.C.A. § 456(j). On June 30, 1967, the section was further amended by the Military Selective Service Act, which amendment eliminated the requirement of a hearing by the Department of Justice when there is an appeal from a Local Board decision denying conscientious objector status. The Act of June 30, 1967, does not specifically provide for a continuation of the procedure as provided in the above regulation. However, on June 30, 1967, there were approximately 2,700 conscientious objector cases being processed by the Department of Justice. The Committee handling the bill evidently desired to remedy the situation and included in Conference Report No. 346, 90th Cong., 1st Sess., U.S. Code Cong. & Admin.News 1967, p. 1360, the following:

"The conferees have been advised by the Attorney General that there are currently approximately 2,700 conscientious objector cases being processed by the Department of Justice. The House-Senate conferees believe that the processing of these cases should be completed despite the change in the law and advisory opinions referred to the individual

---

2. 32, C.F.R., Chapter XVI, Part 1626.25, Special provisions when appeal involves claim that registrant is a conscientious objector.

"(b) If the appeal board tentatively determines that the registrant is not entitled to classification in either a class lower than Class I–O or in Class I–O, it shall transmit the entire file to the United States Attorney for the Federal judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice.

\* \* \* \* \*

"(d) Whenever a registrant's file is forwarded to the United States Attorney in accordance with paragraphs (b) and (c) of this section, the Department of Justice shall thereupon make an inquiry and hold a hearing on the character and good faith of the conscientious objections of the registrant. The registrant shall be notified of the time and place of such hearing and shall have an opportunity to be heard. If the objections of the registrant are found to be sustained, the Department of Justice shall recommend to the appeal board (1) that if the registrant is inducted into the armed forces, he shall be assigned to noncombatant service, or (2) that if the registrant is found to be conscientiously opposed to partici-

pation in such noncombatant service, he shall in lieu of induction be ordered by his local board to perform for a period of twenty-four consecutive months civilian work contributing to the maintenance of the national health, safety, or interest. If the Department of Justice finds that the objections of the registrant are not sustained, it shall recommend to the appeal board that such objections be not sustained.

"(e) Upon receipt of the recommendation of the Department of Justice, the appeal board shall mail a copy thereof to the registrant together with a letter advising the registrant that, within thirty days after the date of such mailing, he may file with the appeal board a written reply concerning the recommendation of the Department of Justice. Upon receipt of the reply of the registrant or the expiration of the period afforded him to make such a reply, whichever occurs first, the appeal board shall determine the classification of the registrant, and in its determination it shall give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice. The appeal board shall also give consideration to any reply to such recommendation received from the registrant \* \* \*."

appeal boards not later than 12 months after enactment of the Military Selective Service Act of 1967."

The record before the court reveals that the Department of Justice and the Appeal Board proceeded to complete their procedures in the instant case, which resulted in the classification by the Appeal Board of I-A-O on May 11, 1968.

The defendant appeared before a special hearing officer appointed by the Department of Justice on June 5, 1967. The hearing officer evaluated the defendant's Selective Service file and the résumé of an inquiry made by the Federal Bureau of Investigation in the matter, as well as the testimony of the defendant given at the hearing, and concluded that the defendant did not meet the test of conscientious objector status. On February 20, 1968, the Department of Justice, Conscientious Objector Section, recommended to the appeal board that the defendant be classified I-A-O. On March 7, 1968, the clerk of the Appeal Board mailed the defendant a copy of the report of the investigation and the hearing made by the Department of Justice, and advised the defendant of his right to make a reply within thirty days.[3] The Appeal Board classified the defendant I-A-O on May 11, 1968. On May 24, 1968, the local board mailed the defendant SSS Form 223 (Order to Report for Armed Forces Physical Examination) by which he was ordered to report for physical examination on June 10, 1968. The defendant and his father appeared before the clerk of the Local Board on May 29, 1968, and requested a personal appearance before the Board. On June 10, 1968, the defendant reported for his pre-induction physical examination as directed, and was found to be fully acceptable for induction into the armed forces. It is of some interest that the defendant caused himself to be examined by a private physician only two days thereafter. The defendant and his father appeared before the Local Board at a meeting held on June 17, 1968, but no change in classification was made. On June 25, 1968, the defendant was mailed SSS Form 252 (Order to Report for Induction), by which he was ordered to report for induction on July 15, 1968. On June 26, 1968, the defendant, through his attorney, instituted civil action No. FS-68-C-38 in the District Court for the Western District of Arkansas, by which he sought cancellation of the order to report for induction and other relief. A hearing was held on July 2, 1968, at which defendant's (then plaintiff) complaint was dismissed for lack of jurisdiction.[4] Defendant did not report for induction on July 15, 1968, but instead addressed a letter to the Local Board in which he "refused" his I-A-O classification, and once again requested that he be classified I-O. On July 17, 1968, an administrative review of defendant's file was completed by the Arkansas State Headquarters of the Selective Service System, by which it was determined that defendant had been afforded all procedural rights available to him within the Selective Service System. On July 22, 1968, SSS Form 301 (Delinquent Registrant Report) was mailed to Arkansas State Headquarters for transmittal to the United States Attorney, setting in motion the present proceeding.

■ It is abundantly clear from the record in this case that every pro-

---

3. The record does not reflect whether or not a reply was in fact made.

4. 50 App. § 460(b) (3) provides in part: "No judicial review shall be made of the classification or processing of any registrant by local boards, * * * except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form * * *."
See Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Clay v. United States, (5 Cir.1968) 397 F.2d 901.

cedural right due the defendant was accorded him and that he has exhausted every administrative remedy. We therefore reach the question of whether there was any basis in fact for the conclusion of the Appeal Board, as its classification was an action de novo which superseded the action taken by the Local Board. The basis of defendant's claim that he is entitled to full conscientious objector status (I-O) is revealed by the hearing, and inquiry conducted by the Department of Justice; the defendant's answers to SSS Form No. 150 (Special Form for Conscientious Objectors); his letter to the Local Board dated September 12, 1966, summarizing his case on appeal to the state board; and his letter to the Local Board dated July 15, 1968, in which he "refused" his I-A-O classification.

The defendant claims to be conscientiously opposed to participation in war in any form, and his Selective Service file contains statements by the defendant and others knowing him sufficient to make a prima facie case. The burden is not upon the Government, but upon the registrant, to bring himself within the excepted class. Dickinson v. United States, (1953) 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. The court at page 397 of 346 U.S., at page 157 of 74 S.Ct. stated:

"The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. * *

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption. * * * But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice."

In Dickinson the registrant was wrongfully denied a ministerial classification. The issue was thus the nature of the registrant's *activities*, and he was able to make a prima facie case by means of objective facts alone.

In Witmer v. United States, (1955) 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, the court at page 396 of 75 S.Ct. stated:

"[T]he ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. * * * In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in Dickinson, the evidence providing 'basis in fact' must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith."

It does not appear from the record that the defendant's sincerity has in anywise been challenged. No statement made by the defendant in any way casts doubt on his sincerity and good faith. The hearing officer clearly did not find the defendant to be insincere, and it is particularly noteworthy that none of the statements obtained by the Department of Justice

from persons acquainted with the defendant permit an inference of insincerity. While it it true that local and appeal board members are not required to believe statements of a registrant as to his conscientious objection, the record must contain some evidence of insincerity or bad faith if the classification is to be upheld on judicial review.

The remaining question for the court to decide is one of law: Are the defendant's sincerely held beliefs inconsistent with conscientious opposition to participation in war in any form demanded by Congress as a prerequisite to conscientious objector status?

█ The Government contends in its brief that the defendant's answer to question 2(e) of Series IV, SSS Form No. 150 (Special Form for Conscientious Objectors), reflects that the defendant's opposition to noncombatant service is not because of any opposition to participation in war in any form. While it is true that the defendant does not therein specifically parrot the desired phrase, it would be emphasizing form over substance to conclude that the statement reflects that the defendant is *not* so opposed. Objections to service on the grounds that the defendant will be required to take an oath and that he will be placed in a "sinful environment" are in no way inconsistent with conscientious opposition to participation in war in any form. In any event, the defendant reaffirmed his opposition to participation in war in any form in his letter, dated August 18, 1965, to the Local Board in which he requested an appeal from his I-A-O classification. In addition, the defendant attempted to clarify his position at trial, but this court is limited in its review to evidence that appeared in the administrative proceedings. Cox v. United States, (1947) 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59.

█ The defendant claims in part that participation in noncombatant service would or could prevent him

from attending regular worship services at a Church of Christ holding the same doctrinal views as his own. It appears to be the doctrine of some Churches of Christ that the Bible does not authorize the use of a regular pastor, Sunday schools or music in connection with formal church worship. The defendant, therefore, feels that he cannot, in good conscience, worship at any church holding a different belief. The Selective Service Act does not recognize objections to service based on the fact that service would interfere with the *practice* of the registrant's religion. Tomlinson v. United States, (9 Cir. 1954) 216 F.2d 12, cert. den. 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755. This fact is not, however, decisive.

In Sicurella v. United States, (1954) 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436, the court at page 406 of 75 S.Ct. said:

"The test is not whether the registrant is opposed to all war, but whether he is opposed, on religious grounds, to participation in war."

\* \* \* \* \* \*

"We believe, however, that if the requisite objection to participation in war exists, it makes no difference that a registrant also claims, on religious grounds, other exemptions which are not covered by the Act. Once he comes within § 6(j), he does not forfeit its coverage because of his other beliefs which may extend beyond the exemption granted by Congress."

█ A prima facie case was established when the defendant formally attested that he was conscientiously opposed to participation in war in any form, and persons knowing the defendant attested to his sincerity. No statement made by the defendant is in any way inconsistent with his professed belief. The fact that defendant also objects to service, on religious grounds, for a reason not recognized by the Act makes no difference.

■ The chief contention of the Government is that a "basis in fact" for the classification is evidenced by the Department of Justice hearing. It cites in support of that contention Tomlinson v. United States, supra; and Roberson v. United States, (10 Cir. 1953) 208 F.2d 166. The court has no quarrel with the holding of the cases cited, but they are not applicable under the uncontroverted facts in the instant case. A thorough examination of the record discloses that there is no valid basis in fact to justify the action of the Board.

On June 5, 1967, the defendant, accompanied by his father and one witness, appeared before a hearing officer, but the complete report of the hearing officer is not included in the record. On February 20, 1968, the Chief of the Conscientious Objector Section of the Department of Justice submitted a report to the Appeal Board, in which the Department referred to the findings and recommendation of the appeal officer. In that report the Department stated:

"The hearing officer observed that the registrant appeared to be very active in the Church of Christ and has been raised in a family steeped in traditions of that church, but concluded that the principal reason that the registrant does not want to serve in the military is because he feels it would place him in a bad environment away from his church and he would frequently not be able to attend services of his particular denomination."

The hearing officer then concluded that in his opinion the registrant did not meet the requirements for conscientious objector status, and recommended that the appeal of the registrant be not sustained.

There was not included in the report any reference to the testimony of the registrant's father but the hearing officer stated that the witness who appeared with the registrant testified "that the registrant is very dedicated to Church life and doctrines."

Attached to the report of the Department is the "Résumé of the Inquiry" prepared by the F.B.I. That résumé contains the following as the opinion of a teacher:

"He considered the registrant to be of good moral ethics and behavior and knows registrant has real serious Christian convictions because he has overheard the registrant's talks with other students."

The report of the F.B.I. also refers to the attendance of the registrant at the Petit Jean Vocational School in Morrilton, Arkansas, and states:

"Three officials of the school stated that the registrant was a well behaved young man, quiet, dependable, trustworthy, and they all agreed he was honest and sincere concerning his religious beliefs."

The F.B.I. report also quotes from other persons who were interviewed, and all were unanimous in their belief that the registrant is sincere in his beliefs based upon his religious training. The résumé furnishes no "basis in fact" for the classification finally made.

■ The Department of Justice in *its letter to* the Appeal Board stated:

"The Appeal Board can and should give weight to the fact that the Local Board has had the advantage of seeing the registrant and hearing him testify."

That statement is false. The defendant never appeared personally before the Local Board at any stage of his classification or appeal until after the Appeal Board had acted and then the Local Board granted him and his father the courtesy of a call.

■ The file contains no minutes of what transpired at any meeting of the Board or any consideration given by the Board to the registrant's application for exemption. There is no statement by the Board to indicate that they thought the registrant was not

sincere, and the file reflects no reason for the Board's action. The report of the Department of Justice, which recommended that the registrant should be classified I-A-O is based in part upon the report of the hearing officer, but the full report of the hearing officer is not in the file. The court understands that usually the hearing officer merely talks to the registrant or anyone accompanying him and then makes a report of his conclusions from the brief contact with the registrant. Under these circumstances the court cannot accept the contention of the Government that the conclusion of the hearing officer is a sufficient basis in fact to support the action of the Board.

On May 11, 1967, the Senate passed S. 1432. When the bill reached the House of Representatives, it was amended by striking out all after the enacting clause and substituting the language of the House bill, which had been reported in House Report 267. The House report stated:

"The provision of existing law relating to conscientious objectors has been the subject of considerable controversy within recent months. This controversy was primarily the result of a 1964 Supreme Court decision in U. S. v. Seeger (380 U.S. 163, 85 S. Ct. 850, 13 L.Ed.2d 733) in which the Supreme Court held that the test of conscientious objection is 'a sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption * * *.' The Supreme Court decision resulted in a significant broadening of the basis on which claims for conscientious objection can be made.

"The Director of Selective Service advised the Committee on Armed Services that in his judgment this undue expansion of the provision of the law relating to conscientious objection could very easily result in a substantial increase in the number of unjustified appeals for exemption from military service based upon this provision of law." U.S. Code Congressional & Adm.News, 90th Cong., 1st Sess., p. 1333.

In Conference Report No. 346, heretofore referred to, the following appears at page 1359, U.S. Code Cong. & Admin.News, 90th Cong., 1st Sess.:

"The House language amended the existing provision of law relating to conscientious objectors by—

"1. Eliminating the requirement for a hearing by the Department of Justice when there is an appeal from a local board decision denying conscientious objector status, and

"2. By eliminating the definition of religious training and belief as meaning 'an individual's belief in a relationship to a Supreme Being involving duties superior to those arising from any human relationship but does not include essentially, political, sociological, or philosophical views, or a merely personal moral code.' "

The Senate conferees concurred in the expressed desire of the House to more narrowly construe the basis for classifying registrants as "conscientious objectors," and suggested that congressional intent in this area would be clarified by the inclusion of language indicating that the term "religious training and belief" does not include "essentially political, sociological, or philosophical views, or a merely personal moral code." It is clear that Congress intended, by defining the term "religious training and belief," to exclude "essentially political, sociological, or philosophical views or a merely personal moral code" as a basis for exemption.

 The amendment does not affect the conclusion under the facts in this case. There is no hint in the evidence before the Board that the defendant's failure to report for induction was caused by any political, sociological or philosophical views or any

personal moral code. In the opinion of the court the Congress was seeking to deny exemption to those persons whose claims are not solidly and conscientiously based upon religious training and belief.

The court is convinced that the refusal of the defendant to report for induction is based on religious training and belief. Since the sincerity of the defendant cannot be questioned and since the record does not disclose any facts from which even an inference could be drawn that the belief of defendant is based on a "merely personal moral code." The court is compelled to find the defendant not guilty of the charge contained in the indictment.

Judgment should be entered finding the defendant not guilty, discharging him to go hence without day, and dismissing the indictment.