**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jimmie Durrell WASHINGTON,**
**Defendant-Appellant.**

**No. 17744.**

United States Court of Appeals
Sixth Circuit.

March 26, 1968.

Ed. M. Hurley, Memphis, Tenn., for appellant.

Henry L. Klein, Memphis, Tenn. (Thomas L. Robinson, U. S. Atty., Memphis, Tenn., Fred M. Vinson, Jr., Asst. Atty. Gen., Dept. of Justice, Criminal Division, Washington, D. C., on the brief), for appellee.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a conviction for refusing to submit to induction into the Armed Forces of the United States, in violation of 50 U.S.C.App. § 462. Appellant contended in the District Court, as he does on appeal, that he should have been granted his requested classification of 1–O (conscientiously opposed to participation in war in any form) rather than the 1–A–O classification (conscientiously opposed to combatant service but available for noncombatant service) approved by both the state and Presidential appeal boards.[1]

 As the parties recognized in the District Court, the scope of judicial review of a selective service classification is exceedingly narrow; the sole question being whether a "basis in fact" exists for the classification given. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946). The District Court answered this question affirmatively. We hold, however, that appellant's selective

---

1. The statutory basis for both classifications is found in 50 U.S.C.App. § 456 (j) : Nothing contained in this title [sections 451–454 and 455–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title [said sections], be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) [section 454(b) of this Appendix] such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title [section 462 of this Appendix], to have knowingly failed or neglected to perform a duty required of him under this title [sections 451–454 and 455–471 of this Appendix]. * * *

service file reveals no basis in fact for the 1–A–O classification, which implicitly found him available for noncombatant service, and that his conviction must therefore be reversed.

The burden is on a selective service registrant to show that he is entitled to the classification which he claims. See Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953). If, however, a registrant has adduced evidence which would entitle him to the claimed classification, then, in order for a court to find that a basis in fact exists for the classification determined by the selective service authorities, it is necessary that the record contain "some affirmative evidence to support the * * * finding that a registrant has not painted a complete or accurate picture of his activities." Id. at 396, 74 S.Ct. at 157. At issue in *Dickinson* was a registrant's claim to a ministerial exemption, the validity of which depended on proof of certain objective facts with regard to the registrant's religious activities. The Court observed in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), that in cases such as the present one, where the claim is conscientious objection,

> * * * the registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective ques-

tion. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. 348 U.S. at 381–382, 75 S. Ct. at 396.

Hence, in cases where the claimed classification depends on objective facts, mere disbelief by the selective service authorities will not provide a basis in fact for granting a different classification. Where, however, the veracity of the registrant is the principal issue, disbelief will suffice. But even in the latter situation, the record must contain some statement of this disbelief if the classification is to be upheld upon judicial review. See *Witmer,* supra, at 382, 75 S.Ct. at 392.

In the instant case, the record reveals that appellant's sincerity has not seriously been questioned. Both the hearing officer appointed pursuant to the selective service appeals proceedings and the inducting officer stated that appellant appeared to be sincere in his convictions.[2] The hearing officer did state, and the District Court reiterated, that appellant "was not strong or forceful in the statement of his belief." It does not appear, however, that the hearing officer regarded this fact as inconsistent with appellant's sincerity, nor do we think he would have been correct in doing so. Indeed, a gentleness of spirit would tend to support, rather than to defeat, a claim to conscientious objector status. It is noteworthy that in United States v. Simmons, 213 F.2d 901 (1954), rev'd on other grounds, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955), a registrant's excessive use of force was held to provide a basis in fact for discounting his sincerity.

---

2. The hearing officer's resume contains the following:

A neighbor in Memphis advised that the registrant is a good boy and has caused no trouble; that he and his brother always seem to be working on cars or helping their father on various projects; that the registrant's parents are strict and never allow the registrant or his brothers to stay out late at night and that they hold religious meetings in their home on various occasions. * * * [Another witness] advised that "whenever the church doors are open, Jimmie is there;" that his social life revolves around the activities of the church and he lives his faith.

The factual basis here upon which the District Court seems primarily to have relied in upholding the I–A–O classification is the finding of the hearing officer that appellant's "reasons for not being willing to serve in noncombatant military training and service were not too convincing." In the context of this case, this finding appears to relate not to the question of appellant's sincerity, but rather to the question of whether appellant had successfully brought himself within the terms of the statute as one "who, by reason of religious training and belief, is conscientiously opposed to war in any form." The hearing officer observed that appellant, a member of a denomination known as the Church of Christ,[3] objected to swearing when the selective service oath was administered, and also objected to being "yoked with unbelievers," citing Biblical injunctions against both obligations. Because no oath is required and because appellant would be yoked with unbelievers in civilian employment, the hearing officer regarded appellant's reasons as insufficient to preclude noncombatant service. The District Court apparently took the view that the absence of specific scriptural directions to refrain from noncombatant participation in the service was a sufficient basis in fact to support appellant's classification. This approach finds some support in Rowland v. United States, 207 F.2d 621 (9th Cir. 1953).

■ We are unable to agree with this analysis of appellant's selective service file. Even if it were assumed that the statute required specific scriptural support for appellant's claim of exemption from any form of military service, it is to be noted that appellant cited scriptural provisions other than those mentioned by the hearing officer in support of his desired 1–O classification. In a letter to the state Appeal Board dated March 22, 1964, appellant wrote:

Soldiers must give thought for apparel in his [sic] uniform. Christ commands us differently. Luke 12:-22–30. Therefore I must give no thought for raiment, only that it be decent, modest. I Cor. 14:40, and I Tim. 2:9. If I were a member of the Armed Forces I would be having fellowship with their unfruitful works of darkness which Eph. 5:11 forbids.

In any event, we do not accept the view that the absence of specific doctrinal support for exemption from noncombatant service provides a basis in fact for appellant's 1–A–O classification.

■ In United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), the Supreme Court considered the question of how properly to interpret the conscientious objector statute requirement that the objector hold a "belief in a relation to a Supreme Being involving duties superior to those arising from any human relation." The Court held that the statute did not require belief in the traditional God, but only that "the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption." 380 U.S. at 184, 85 S.Ct. at 863. The reasoning of The Court applies as well to the present case, where the issue is not the definition of "Supreme Being," but rather the requirement that the objector's opposition to war arise "by reason of" his religious training and belief:

[I]t must be remembered that in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim

---

**3.** This denomination is not the same as the larger denomination similarly named. Appellant's denomination is characterized in the selective service file as one which "opposes military service in any form, has no Sunday School and no communion cups, and * * * has branches in Tennessee, Arkansas and Mississippi."

of the registrant that his belief is an essential part of a religious faith must be given great weight. 380 U.S. at 184, 85 S.Ct. at 863.

Although appellant's religion in this case might appropriately be termed an orthodox, or even a fundamentalist one, with heavy emphasis on Biblical texts, there is no reason to assume that beliefs which have no specific textual basis are any less religious or any less sincerely held. The Bible was not written with the Universal Military Training and Service Act in mind, and a verbal congruence between the two documents can therefore not reasonably be demanded.

Appellant articulated his conviction that he could not conscientiously serve in a noncombatant capacity on numerous occasions, perhaps most explicitly in his letter of October 6, 1965, to the State Appeal Board:

> God's word forbids me to take part in war in any form. If I accepted a I–A–O classification I would be no better off than I would with a I–A. I would still be helping to make war and soldiers. I would be working and supporting the very thing I am saying is wrong. For example, let's say I went with some boys to rob a bank. I didn't hold a gun on no one and I didn't take any of the money, but I was with them throughout the robbery. In the eyes of the law I was just as much in the bank robbery as the boys who actually carried the gun and took the money. This is the way I would be if I took any part in armed forces in combatant or noncombatant. The total purpose of the military is to make war, involving the injury and death of the enemy. Noncombatant soldiers are just as much a part of the military "team", and just as much under military authority as are the combatant soldiers, those that actually carry and shoot the guns.

If the record contained evidence that the Church of Christ were willing to contribute directly to the war effort, by, for example, operating a defense plant, then a basis in fact would exist for holding that appellant's religious beliefs entailed no opposition to noncombatant service. See United States v. Moore, 217 F.2d 428 (7th Cir. 1954), rev'd on other grounds, 348 U.S. 966, 75 S.Ct. 530, 99 L.Ed. 753 (1955). In the absence of such proof, or any indication that appellant's beliefs were insincerely held, we find no basis in fact to support the classification in which he was placed.

The judgment of the District Court is reversed, and the case is remanded with instructions that the indictment be dismissed.