UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony Lewis GRIFFIN, Defendant-Appellant.

No. 20010.

United States Court of Appeals, Sixth Circuit.

Nov. 19, 1970.

Donald L. Stepner (court appointed), Covington, Ky., for appellant.

William D. Kirkland, Lexington, Ky., for appellee; Eugene E. Siler, Jr., U. S. Atty., James F. Cook, William D. Kirkland, Asst. U. S. Attys., Lexington, Ky., on brief.

Before PHILLIPS, Chief Judge, and McCREE and BROOKS, Circuit Judges.

PHILLIPS, Chief Judge.

Griffin, a member of Jehovah's witnesses, was granted conscientious objector status by his Selective Service Board. At a jury trial in the District Court he was convicted for failure to report as a conscientious objector for civilian service at a State hospital in lieu of military service, in violation of 50 U.S. C. App. § 462.

A prison sentence of five years was imposed by the District Judge. Griffin appeals.

The controlling question on appeal is whether Griffin was entitled to an exemption as a regular or duly ordained minister of religion under 50 U.S.C. App. § 456(g).

The record shows that Griffin has devoted a considerable amount of his time to the teaching of his religious faith by door-to-door evangelism and within the local Kingdom Hall. He testified that he spends approximately four hours a day in religious work and strives to dedicate 100 hours per month to this activity. Testifying on his own behalf, he described his work generally as follows:

> "Well, we go out and talk to people, show them what the Bible has to say on certain subjects. We place Bible literature with them. If they show interest, we call back and we knock on doors, we do various forms of field ministry."

He further testified that he gives Bible lectures and talks on programs at his church. He also has assisted his local minister in some ministerial duties, but has not served on a regular basis as minister of his group or has not performed regularly the public rites of his faith. Although designated as an ordained minister of Jehovah's witnesses and rendering religious service with zeal and dedication, his activities are not shown to be those of a regular minister.

This Court therefore concludes that there is a basis of fact in the record for the denial of the claim for ministerial exemption by the local board and appeals board. Balderrama v. Unit-

ed States, 419 F.2d 1279 (5th Cir.), cert. denied, 397 U.S. 1068, 90 S.Ct. 1508, 25 L.Ed.2d 689; Robertson v. United States, 417 F.2d 440 (5th Cir., in banc); United States v. Tichenor, 403 F.2d 986 (6th Cir.).

■ The record demonstrates, as contended by Griffin, a lack of understanding of the relevant criteria for a ministerial exemption on the part of the members of the local board. This lack of understanding does not require reversal when the record demonstrates that both the local board and appeals board considered the claim for ministerial exemption and there is a basis in fact in the record to support the conclusion that Griffin is not a regular minister of religion.

Griffin complains that he was not furnished the proper forms for claiming a ministerial exemption. Nevertheless the record shows that the claim of ministerial status was presented to and considered by the local board and again on administrative appeal. Griffin gave the following description of the hearing before the local board:

> "Well, I took my Bible and I told them that I was a minister and what we did and what I did. They didn't want to let me read it to them from the Bible. So I quoted to them the Scriptures that shows our ministerial activity and I quoted to them our position and they told me their position."

He further testified that he made a similar personal appearance at the administrative hearing on his appeal which was conducted in Lexington, Kentucky.

We hold that the District Court did not commit reversible error in failing to grant Griffin a verdict of acquittal or in refusing to grant a continuance. All other contentions on the appeal have been considered and are found to be without merit. The judgment of conviction is affirmed.

This Court is concerned, however, with the severity of the sentence. At oral argument it was represented by the attorney for appellant that Griffin would obey an order from the District Judge to perform conscientious objector work in a civilian capacity, although his religious beliefs would not permit him to obey such an order by his Selective Service Board.

■ The case is remanded to the District Court to allow for the filing of a motion under Rule 35, Fed.R.Crim.P., for review of this sentence so that the District Court may consider suspending the sentence and granting probation on condition that Griffin perform the exact conscientious objector work under orders of the District Court which he has refused to perform under orders of the Selective Service Board. United States v. Daniels, 429 F.2d 1273 (6th Cir. July 30, 1970).

Affirmed and remanded.

BROOKS, Circuit Judge (concurring in the judgment).

I concur in the judgment reached in this case. I disagree, however, with the Court's conclusion that a "lack of understanding [of the relevant criteria for a ministerial exemption] does not require reversal when the record demonstrates that both the local board and appeals board considered the claim for ministerial exemption and there is a basis in fact in the record to support the conclusion. * * *" To so hold extends judicial review of Selective Service classifications beyond the statutory authorization and the case law of Robertson v. United States, 417 F.2d 440 (5th Cir. 1969), and United States v. Tichenor, 403 F.2d 986 (6th Cir. 1968). The statute 50 U. S.C. App. § 460(b) (3) relating to judicial review of criminal prosecutions under the Selective Service Act provides "[t]hat such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." The cases are legion which hold that this provision permitting review "only when there is no basis in fact for the classification" mandates that courts have only an extremely nar-

row scope of review of classifications given registrants by the Selective Service Agencies.

The phrase "no basis in fact" as used in the statute has received judicial construction which has tended to expand the scope of court review of Selective Service classifications. Thus, while the phrase seems to connote that review of classifications is permitted only when there is no physical evidence to support a particular classification, see e. g., Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Maynard v. United States, 409 F.2d 505 (9th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); Pine v. United States, 212 F.2d 93 (4th Cir. 1954), it has been interpreted to permit review when the classification results from arbitrary or capricious conduct, Parrott v. United States, 370 F.2d 388 (9th Cir. 1966) or when basic concepts of due process or fairness have been violated, Niznik v. United States, 173 F.2d 328 (6th Cir. 1949); Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968), or where Selective Service statutory regulations or procedures have not been properly followed, Robertson v. United States, supra; Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969), or where a classification has been based upon an erroneous view of the law, United States v. Tichenor, supra; Owens v. United States, 396 F.2d 540 (10th Cir. 1968); Gatchell v. United States, 378 F.2d 287 (9th Cir. 1967).

In the present case appellant seeks judicial review of his classification because an admittedly erroneous standard was used by the local board in considering whether he should have been granted a ministerial classification. When this defense is raised to a criminal prosecution for violation of the Selective Service Act, the law is that a conviction cannot be sustained if it is shown that both the local board and the state appeal board have applied an incorrect standard to deny a registrant a particular classification. See, Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Tichenor, supra; Owens v. United States, supra; Gatchell v. United States, supra. Under these circumstances, it is loosely said that there is "no basis in fact" for the classification, see Gatchell v. United States, supra, however, it would be more accurate to say that the conviction cannot be sustained because the law was incorrectly applied. The cases which have explored the application of the rule have involved situations where the local board applied an incorrect standard which affirmatively appeared in the registrant's file and upon review by the state appeal board, there apparently was no recognition of the error or correction of it, United States v. Tichenor, supra, or it clearly appeared from the record that the appeal board applied an incorrect standard in considering the classification, Sicurella v. United States, supra; Gatchell v. United States, supra.

The thrust of these authorities is to carve out an exception to the presumption that a state selective service board is required upon appeal to review de novo a registrant's request for a certain classification, see C.F.R. § 1.1626.26. Ordinarily, it is presumed that even though an erroneous standard is applied by a local board in denying a requested classification, the state appeal board will, by independently reviewing the registrant's file, apply the correct standard thereby curing the error, even if no change in the classification results. See United States v. Rose, 424 F.2d 1051 (6th Cir. 1970); Landau v. Allen, 424 F.2d 668 (6th Cir. 1970); DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965); Tomlinson v. United States, 216 F.2d 12 (9th Cir. 1954). In the cases in point, this presumption was held not to exist where it clearly appeared in the appeal board's decision itself that an incorrect standard was applied (this was the case in Sicurella v. United States, supra; and Gatchell v. United States, supra), or that the presumption could not be indulged in where the error committed by the local board actually appeared in the record reviewed by the

state board and no mention was made that the error was noticed or corrected (this was the case in United States v. Tichenor, *supra*).

The facts which existed in *Gatchell, Sicurella* or *Tichenor* are not present in this case. Appellant Griffin's file contained two written requests for a ministerial classification, and Griffin renewed this request in an out-of-the-ordinary personal appearance before the state appeal board when it was considering his case. Appellant's file did not show that the local board applied an incorrect standard and the decision of the appeal board only states that appellant was classified 1–O. Cf. Gatchell v. United States, *supra*. Under these facts it must be concluded that a case has not been established to invoke the exception to the rule that an appeal board's independent *de novo* review cures an erroneously applied standard. See United States v. Rose, *supra*. Since a case has not been established to invoke the exception to the rule, this Court should not review the record to find physical evidence to support appellant's classification resulting from the state appeal board's *de novo* review.

I also disagree with the comment in the Court's opinion relating to the "severity" of the sentence imposed in this case. Since, within statutory limitations, the length of a sentence lies solely within the discretion of the district judge, I do not think an appellate court should undertake to comment upon its reasonableness. A district judge has before him all the necessary information upon which to base a proper exercise of discretion, whereas an appellate court does not. I see no objection, however, to our suggestion that the district court might consider suspending sentence and granting probation on condition that the appellant perform the conscientious objector work under order of the Court that he has refused to perform under order of the Selective Service Board.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. I believe that the judgment below should be reversed under the authority of the decision of a unanimous panel of this court in United States v. Tichenor, 403 F.2d 986 (6th Cir. 1968).

In *Tichenor*, we held that where the decision of the local board "was based on an erroneous view of law", 403 F.2d at 988, and where it was impossible to determine the basis of the decision of the appeal board because of the denial by the District Court of access to the names of the appeal board members and the record of its proceedings, a conviction for refusal to submit to induction must be reversed and the case remanded to the District Court "for a new trial with instructions that it permit appellant to attempt to prove that the appeal board did not correct the error of the local draft board". 403 F.2d at 990. This holding followed the Supreme Court's decision that a classification based on an error of law cannot form the basis for a conviction for refusal to submit to induction. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955). I believe that this appeal presents at least as strong a case for reversal as *Tichenor*.

I think it will be helpful to quote the testimony of three of the four local board members who heard Mr. Griffin's case to show just how deficient was their understanding of the applicable law.

A  [Mr. Baulch]  Well, we didn't see how he could be a minister and he was working full time in the office right next to the draft board office.

Q  You say he was working full time in '66 and '67? How many hours was he putting in?

A  I don't know.

Q  Well, how did you know he was working full time?

A  Well, he was there every time we had a draft board meeting.

Q  And that is how you determined he was working full time?

A  [no answer].

MR. STEPNER [counsel for appellant]: Let the record show that he nodded "yes" please.

\* \* \* \* \* \*

Q Was it your sole basis for determining that he was not a minister, the fact that he was working?

A That was the biggest part of it.

Q What else was there?

A Well, I think that was it.

Transcript at 111, 112. The uncontradicted testimony at trial showed that appellant held a secular job at which he worked 20 hours each week, and that he spent approximately 40 hours per week working as a "Pioneer" according to the tenets of the Jehovah's Witness faith. It has been held that a man working as many as 40 hours per week as a crane operator may still be entitled to a ministerial classification. Wiggins v. United States, 261 F.2d 113 (5th Cir. 1958), cert. denied, 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676, reh. denied, 359 U.S. 976, 79 S.Ct. 874, 3 L.Ed.2d 843 (1959); *see also* Matyastik v. United States, 392 F. 2d 657, 660, cases cited in n. 8 (5th Cir. 1968).

Another member of the local board, Mr. Lamker, testified as follows:

Q What are the rules as you believe them to be for classifying ministers?

A Well, to me it is similar to an attorney or a certified public accountant or a doctor, that nobody can walk down the street and claim to be an attorney or a C.P. A. or a doctor just because they say they are. There are certain educational qualifications that have to be met and usually there is state laws that have to be adhered to and examinations taken and background to be able to classify yourself as a professional man and I think a minister is a professional man.

Q And if a person works, on top of saying he is a minister, would

you deny him this classification?

A No, sir, no.

Q Well, what educational standards do you believe that—will you state that you have to have?

A I believe they should go to a theology school and be an accredited school and also be—either have gone through a formal or public ordination ceremony of some sort so that the public knows that they are in fact a minister.

Q A public ordination?

A I think so, yes.

Q Where would you conduct that?

A Well, it depends on the denomination. If you were a Catholic, I imagine you would go to a Catholic Church and if you were a Baptist, I imagine you would go to a Baptist Church.

Q If you were a Jehovah's Witness, you would go to a Jehovah's Witness Church?

A That's right.

Q Did you find out whether he had been ordained before the Jehovah's Witness Church?

A I don't know whether they—I am not real sure whether they have a formal ceremony.

Q Then I assume from your answer you did not find out, is that correct?

A Yes.

Q So, you don't know whether he is ordained?

A No, I don't.

Q What state license do you expect these people or do you want ministers to have?

MR. COOK [Assistant United States Attorney]: Object. It doesn't matter what he wants.

Q Or—well, he said that they should have a state license.

A Well, I imagine it is according to the laws of the state. In accounting we have to take a three-day examination and we have to re-

new our license every year, filed with the state and so forth.

Q What is the state law for a minister's license?

A Sir, I don't know.

MR. STEPNER: All right.

Q What examination do you feel that they have to take?

A Whatever is required of their college or theology school. Just like medicine. I wouldn't know which college a doctor would have to go to. I don't know what license he has to have because I don't know the law regarding every profession.

Q Then you are basing these examinations on a theological school exam?

A That's right, some formal education.

Transcript, at 146–49. This is an incorrect statement of the law. 32 C.F.R. § 1622.43(a) provides in part: "In Class IV–D shall be placed any registrant: (1) Who is a regular minister of religion; (2) Who is a duly ordained minister of religion * * *." 50 U.S.C. App. § 466(g) (2) reads as follows (emphasis added):

The term "regular minister of religion" means one who as his customary vocation preaches and teaches the principles of religion of a church, religious sect, or organization of which he is a member, *without having been formally ordained as a minister of religion,* and who is recognized by such church, sect, or organization as a regular minister.

Mr. Wolnitzek, a member of the local board, testified:

Q Aside from his appearance before you and your skepticism about his ministerial connection, what other things did you consider in denying him his 4D classification?

A Well, I believe, sir, that his indication was on his record that he was working full time in another occupation in there and from that I was unable to find where he was doing a job as a minister.

\* \* \* \* \* \*

Q Correct me if I am wrong. It was your skepticism about his validity as a minister and his work?

A Well, I couldn't find anything in the records, sir, that indicated to me that he had spent some time in studying for the ministry.

Q Do you know what the Selective Service regulations are for a minister exemption?

A Well, no.

Transcript, at 154, 154, 155. Mr. Wolnitzek made the same errors as the others in assuming that appellant's secular work was inconsistent with his being a minister under the Selective Service regulations and that there exists some educational requirement for a IV–D classification. His "skepticism" by itself is not enough to justify his decision, since once a registrant has made a prima facie claim for an exemption, the local board is not free to simply disbelieve him, but may do so only when there is affirmative evidence in its files to refute the claim. Dickinson v. United States, 346 U.S. 389, 396, 397, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Washington, 392 F.2d 37 (6th Cir. 1968); *cf.* Mulloy v. United States, 398 U.S. 410, 416–417, 90 S.Ct. 1766, 26 L. Ed.2d 362 (1970).

There remains some dispute about who was the fourth member of the local board who participated in classifying appellant I–A. The board's clerk testified that the local board's records disclosed that a Mr. Kenneth Weigel, who died prior to the trial, had participated in the decision. However, at trial, one Arthur Tipton, currently a member of Local Board 50, testified that he was one of the board members who had classified appellant I–A, and he elaborated at some length on his reasons for doing so. I do not think we can consider this evidentiary conflict as resolved by the jury's verdict, but, in any event, it is clear that three of the four local board

members acted on erroneous views of law in denying appellant a ministerial exemption and classifying him I–A.

The Government contends, and a majority of the court agrees, that there is, nevertheless, a basis in fact for the denial of the IV–D exemption. My perusal of the record discloses no basis in fact for this determination, except perhaps for an inarticulate "skepticism" about appellant's claims, which, as observed above, *Dickinson, supra; Washington, supra,* is not enough by itself to negative a prima facie case for exemption. Moreover, in the context of a claim for a ministerial deferment, mere skepticism does not have the force it has in conscientious objection cases, since qualification for the IV–D classification is far more capable of objective determination *Witmer v. United States,* 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

But even assuming the existence of a basis in fact, it is not dispositive of the question before us. The Supreme Court has declared that a classification cannot be upheld when it has "no basis in fact", *Estep v. United States,* 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946), or when it is based on an erroneous theory of law. *Sicurella v. United States,* 348 U.S. 385, 75 S.Ct. 403, 99 L. Ed. 436 (1955). "The decisions of the local boards *made in conformity with the regulations* are final even though they may be erroneous". *Estep v. United States,* 327 U.S. at 122, 66 S.Ct. at 427 (emphasis added). Here it is clear that the local board's decision was made under theories of law directly contrary to the regulations and the statutes governing the Selective Service System. When a board makes a decision based on a totally erroneous legal theory, it is acting beyond its legal authority, and its action is "lawless and beyond its jurisdiction", *Estep v. United States,* 327 U.S. at 121, 66 S.Ct. 423, even though it could conceivably make the same decision in accordance with the law. For example, if a board, in defiance of the regulations, classified a registrant I–A because of his racial or religious identification, its action would be void, although it might classify the same man I–A on a permissible rationale. *See Estep v. United States,* 327 U.S. at 120–121, 66 S.Ct. 423. I see no reason why the result should be different here, when it is clear that the board has acted in total disregard of applicable statutes and regulations.

In *Tichenor* we said:

In the present case there is nothing in the record which permits us to determine whether the appeal board perpetuated the local board's error of law when it affirmed the latter's denial of the requested IV–D classification. The District Court received no evidence concerning this question and, apparently without explanation, foreclosed appellant's attempt to present any. * * * Since we are concerned here with a criminal conviction, we cannot under these circumstances hold that the error of the local board was corrected and that the appeal board based its action on independent and proper grounds.

403 F.2d at 990. *See also United States v. Atherton,* 430 F.2d 741 (9th Cir. 1969). The case before us cannot be distinguished on the facts. The District Court, without explanation, denied appellant's motion to obtain the names of the appeal board members and to subpoena them to testify at trial—although the motion was made after the announcement of our decision in *Tichenor,* which appellant cited as authority for his request. Without this evidence, there can be no proper record on which this court can exercise its duty of judicial review.

The assumption that the appeal board corrected the local board's error of law is further undermined by the fact that Mr. Griffin never received the official form for requesting a ministerial deferment despite his clear claim, made on four occasions, for such a classification. At least one member of the local board admitted at trial that such a form, filled

out by appellant, would have been helpful, Transcript at 153; and of course the appeal board never had an opportunity to consider whatever information appellant might have furnished on the form. It is true that appellant was permitted to make oral representations concerning his request for a IV–D classification, but it cannot be gainsaid that a carefully filled-out form would have minimized the risk of his having failed to supply relevant information.

I need not decide, in light of my view of the proper disposition of the case, whether the local board and its clerk's failure to supply the proper form constitutes a denial of a hearing on the issue of classification, as was held in United States v. Sobczak, 264 F.Supp. 752 (N.D.Ga.1968), to require dismissal of the indictment. But at the very least, the Board's failure to provide appellant with the proper form renders even more persuasive the argument that we cannot assume that the appeal board's decision cured the errors in the local board's proceedings.

Accordingly, since all the elements that required reversal in *Tichenor* are present here, I would reverse the conviction and remand the case for proceedings in accordance with that decision.

I fully concur with Judge Phillips' observations concerning the five-year sentence. It appears from the record before us that appellant is a highly religious young man of exemplary moral character. He has spurned opportunities for higher education and for vocational training in order to pursue his mission as a Pioneer in the Jehovah's Witnesses' Church. His apparent eschewing of financial gain is especially convincing evidence of devotion to his ministry in view of the fact that he has a wife and two children to support. The imposition of the maximum possible sentence on such a man runs counter to enlightened concepts of correction and can only undermine respect for our judicial system and its professed human values.