UNITED STATES of America,
Plaintiff-Appellee,

v.

James Edward HEIDT, Defendant-Appellant.

No. 825, Docket 32709.

United States Court of Appeals,
Second Circuit.

Argued May 24, 1971.

Decided June 18, 1971.

**448**

Ronald L. Fancher, Asst. U. S. Atty. (H. Kenneth Schroeder, Jr., U. S. Atty., for W. D. of N. Y., Buffalo, N. Y., on the brief), for plaintiff-appellee.

Joseph D. Bermingham, Jr., Esq., Buffalo, N. Y. (Doyle, Diebold & Bermingham, Buffalo, N. Y., on the brief), for defendant-appellant.

Before KAUFMAN, ANDERSON and MANSFIELD,* Circuit Judges.

MANSFIELD, Circuit Judge:

After a trial by jury James Edward Heidt appeals from a judgment of conviction for wilfully refusing to submit to induction into the Armed Forces. 50 App. U.S.C. § 462(a). He was sentenced to imprisonment for a year and a day by Judge Harold P. Burke of the Western District of New York, and has been released on his own recognizance pending this appeal.

Heidt contends that he is a conscientious objector and that there was no basis in fact [1] for his draft board's refusal to so classify him. We agree and accordingly we reverse.

Heidt, a resident of Buffalo, New York, was born on November 10, 1943. He registered with his local draft board on November 16, 1961, shortly after his 18th birthday. In September of 1962 he filed with the board his initial Classification Questionnaire, in which he indicated that he had been graduated from high school and was working as a machine operator in a Western Electric plant. Although he did not claim on this form either a ministerial exemption or a request for a conscientious objector status (hereinafter "CO"), we attach no significance to these omissions. He was not yet a baptized Jehovah's Witness and the questionnaire was mainly directed to such matters as current address, family status, and present occupation.

On October 1, 1962, Heidt was classified I–A (suitable for service) and shortly afterwards, on December 29, 1962, he was formally baptized into the Jehovah's Witnesses, after a long and rigorous period of instruction in that faith.[2] Nothing of significance occurred thereafter until May 13, 1964, when he was ordered to report for a physical examination. On May 24, he went in person to his draft board and asked to be

* Of the United States District Court, Southern District of New York, sitting by designation, at time argument was heard.

1. The judicial review of selective service actions in the circumstances of this case is limited. Only if there is "no basis in fact" for the local board's decision will the court reverse. Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct.

423, 90 L.Ed. 567 (1946); United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Application of Kanas, 385 F.2d 506, 508 (2d Cir. 1967).

2. He first became interested in the Jehovah's Witnesses in April, 1961, while still in high school.

considered for a minister's exemption, a status to which he was not entitled because he was not a Pioneer Minister in his sect and preaching in his church was not his vocation within the meaning of applicable draft laws.[3] The draft board clerk apparently recognized, however, that he might qualify as a conscientious objector and accordingly supplied him with the Selective Service form for conscientious objectors (SSS Form 150).

He submitted his SSS Form 150 on July 6, 1964,[4] but did not sign Series I of that form, which required him categorically to claim exemptions from (a) combatant training or service, or (b) from both combatant and noncombatant training and service. Instead he wrote "Refer to Attached Sheet" and attached a seven-page statement dated July 2, 1964, outlining in detail the history of his conversion and baptism as a member of Jehovah's Witnesses and his basic religious tenets as a member of that sect, including:

"I have the right to claim neutrality and the rights of neutrals because of my status as an ambassador of God's kingdom. This is exactly the same position Christ Jesus and his apostles took.

\* \* \* \* \* \*

"As an ambassador for Christ, I am already in an army to serve as a 'soldier of Christ Jesus.' (2 Timothy 2:3, 4) Since the Christians' war is not against flesh and blood, I am not authorized by my Commander-in-Chief, Jehovah God, to engage in carnal warfare of this world. Furthermore, being enlisted in the army of Christ Jesus, I cannot desert the forces of Jehovah to assume the obligations of a soldier in any army of this world without being guilty of desertion and suffering the punishment

meted out by Almighty God to deserters."

He also explained that although there were some circumstances where he would use force (such as self-defense, using as much force as appears reasonably necessary), outside of such very limited situations there "are no other circumstances where the law of God authorized killing." Enclosed with his letter was a reprint from the "Watchtower" magazine dated February 1, 1951, signed by him, which outlined the beliefs of Jehovah's Witnesses regarding military service and armed conflict. Although Heidt's letter and his separate handwritten attachment mistakenly stated that as a "Minister" he was exempt from both combatant and noncombatant service, his response as a whole unquestionably made out a *prima facie* case for CO status.

On July 6, 1964, the local board again classified Heidt I–A. At his request the board held a hearing on August 3, at which he personally appeared. The board's version of the hearing included the following:

"He [Heidt] is very sincere about his beliefs and since he began his study he realized the importance of serving God and of being one of his Witnesses in these times in which we are living.

"The Board: 'We are more interested in your serving in the Army. Let us hear what you have to say on that.' 'My objections are based on the Bible which states that, "we should love our neighbor as ourselves." ' He recalled the Sermon on the Mount and said that a man who will take up arms against another has very little love for that man \* \* \* we should keep men from going to war against each other."

---

3. A Pioneer Minister is required to devote a minimum of 100 hours a month to religious duties. United States v. Hull, 391 F.2d 257, 258 (4th Cir.), cert. denied 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968). There is no claim

on this appeal that Heidt was entitled to a minister's exemption.

4. On June 2, 1964, the draft board granted appellant an extension of time to complete the CO form and secure supporting affidavits.

The board voted 4 to 0 to continue appellant's I–A classification. On August 14, 1964, he requested an appeal to the Appeals Board.

In accordance with CO procedures then in force, the Appeals Board made a preliminary determination that Heidt should not be given CO status and then referred the file to the Department of Justice [5] for investigation and report. The FBI compiled a report based on Heidt's record in school, his work experience, and interviews with his former teachers, his friends, and his fellow workers.

The FBI report was forwarded to a Justice Department hearing officer, before whom Heidt personally appeared on January 29, 1965. The hearing officer concluded that Heidt was a sincere CO and that almost all of the many persons interviewed stated either that Heidt was sincere in his personal and religious beliefs or that they had no reason to doubt his sincerity. For a long period before formal baptism into the Jehovah's Witnesses sect on December 29, 1962, he had received instructions in that faith. He had regularly attended five meetings a week since March, 1961; he averaged 8.9 hours a month in door-to-door preaching; and he had been an assistant study conductor since September, 1963. It has been judicially recognized that the tenets of a sincere member of the Jehovah's Witnesses entitle him to CO status and that the views of the members as to self-defense and theocratic war do not bar such status. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

█ The hearing officer's recommendation of CO status for Heidt was overruled by the Department of Justice, which advised the Appeals Board that appellant was not sincere. The Justice Department's letter to the Appeals Board contained a glaring misstatement: "Nowhere in the registrant's statements to the Hearing Officer, does there appear to be a religious basis for claiming conscientious objection to noncombatant service." [6]

Although the hearing officer recommended CO status for Heidt, he uncovered three pieces of evidence which, the Government argues, established Heidt's insincerity: first, a statement of a former hospital co-worker (Heidt worked in a hospital for the first three months of 1962) that appellant "was thinking of joining the United States Navy"; second, a statement by another worker during the same period who "vaguely recalled [Heidt] speaking of going into the United States Army," but could give no details; and third, an undated report by Heidt's supervisor at the Western Electric Company where Heidt worked since March, 1962. This report from a World War II Marine, upon which the Government places primary reliance, stated:

"\* \* \* on one occasion, the registrant asked him [the supervisor] if he had ever been in military service and he answered that he had been in World War II and had been a Marine and that he had then asked the registrant about service, and the registrant then answered that he had not had military service but thought he might be drafted in the near future; that he had then told the registrant it would probably be good if he did go into the service, and the registrant answered that he was single and wanted to have a good time and there was too much discipline in the Army, and had fur-

---

5. Section 456(j) of 50 App.U.S.C. required that appeals from the denial of application for CO status be referred to the Department of Justice. The Department's role was eliminated by the Selective Service Act of 1967, Pub.L. No. 90–40, § 1(7), 81 Stat. 100, 104, codified at 50 App.U.S.C. § 456(j) (Supp. IV, 1969).

6. This misstatement would alone require a remand for a hearing to determine whether the board incorrectly relied on it. United States v. Bornemann, 424 F.2d 1343, 1348 (2d Cir. 1970). However, more serious errors call for reversal.

ther stated that he 'did not like regimentation.' "

None of the statements of Heidt's co-workers relied upon by the Government rise to the level of rebutting the *prima facie* case made out by him or provide a basis in fact for refusing to classify him as a CO. The two comments attributed to Heidt by fellow hospital employees not only are innocuous but irrelevant since they occurred in early 1962, before Heidt's baptism into the Jehovah's Witnesses faith. Cf. Rempel v. United States, 220 F.2d 949 (10th Cir. 1955). The report of his superior at the Western Electric plant—that there was too much discipline in the Army and that he wanted to have a good time—may also have predated his conversion. But even assuming its relevance it was not sufficiently inconsistent with his religious views to warrant denial of a CO status. A sincere conscientious objector need not be a sober-sided lover of discipline and regimentation. Cf. Chernekoff v. United States, 219 F. 2d 721, 724 (9th Cir. 1955). Heidt was not obligated to explain his religious views to his supervisor, an ex-Marine who had voiced the opinion that military service would do Heidt good.

Heidt's delay in reporting his views as a conscientious objector until after he received notice of a pre-induction physical examination hardly provides an adequate basis for an inference of insincerity. Although he had been classified I–A and the regulations, 32 C. F.R. § 1625.1(b), required him to report any fact, within 10 days after it occurred, that might result in his being placed in a different classification, it does not appear that he was aware of the requirement or of the small print on the Selective Service questionnaire submitted in December, 1963. Heidt does not fall within the category of "late bloomer" who suddenly develops CO convictions upon receiving his induction notice. See United States v. James, 417 F.2d 826, 830 (4th Cir. 1969). His interest in his religion began in 1961, before he registered with his board, and he was formally baptized in December 1962, more than 16 months prior to his being ordered to report for a physical examination. There is no evidence that the board was prejudiced in any way by his delay. See United States v. Bornemann, 424 F.2d 1343, 1344 (2d Cir. 1970).

The Government's evidence does not "substantially blur the picture painted by the registrant" which makes out a strong case for CO classification. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969). In the absence of a factual basis, the board improperly refused him that status merely because it believed him to be insincere. United States v. James, 417 F.2d 826, 831–832 (4th Cir. 1969); Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969); United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968).

The conviction is set aside and the local board is directed to classify Heidt as a CO.