Bruce M. WRIGHT, Petitioner,

v.

Donald J. PEPPLE, Commanding Officer, Naval Justice School, Newport, Rhode Island, et al., Respondents.

Civ. A. No. 5070.

United States District Court, D. Rhode Island.

Oct. 9, 1973.

Milton Stanzler, of Abedon, Michaelson, Stanzler & Biener, Providence, R. I., for petitioner.

Lincoln C. Almond, U. S. Atty., Constance L. Messore, Asst. U. S. Atty., Providence, R. I., for respondents.

## OPINION

DAY, District Judge.

This is a petition for a writ of habeas corpus under the provisions of 28 U.S.C. § 2241 by Bruce M. Wright, a member of the United States Navy, assigned to the Naval Justice School at Newport, Rhode Island to test the legality of his detention in the Navy.

During the hearing on said petition no testimony was presented and the only evidence submitted for my consideration was a certified copy of the naval records relating to the petitioner. Thereafter, memoranda were filed by counsel for the parties in support of their respective contentions with respect to the merits of said petition.

An examination of said naval records establishes the following facts. The petitioner, on September 25, 1968, accepted a commission as a Reserve Officer in the grade of Ensign in the United States Navy. At that time he was a student at Stanford University Law School. He then applied and was selected for the Judge Advocate General's Corps Student Program. He was permitted to remain on inactive duty in order to complete law school and gain admission to the Bar.

During the summer of 1970, he was ordered to active duty for a period of eight (8) weeks to attend an officer indoctrination course at Newport, Rhode Island. Petitioner graduated from said Stanford Law School in June, 1971, and was admitted to the Bar of the State of Washington on October 13, 1971. He was then subject to orders to report for four (4) years of active duty as a member of said Judge Advocate General's Corps.

Originally the petitioner was programmed to report for active duty at the Naval Justice School, Newport, Rhode Island in February 1972. On July 31, 1971, the petitioner, who was a sailing enthusiast and had many competitive sailing achievements to his credit, in writing, requested an extension of his orders to report until October, 1972 in order that he could devote his full time to sailing as a member of the United States team in the selection trials for the Olympics to be held in June, 1972. After considerable correspondence, the Commandant, Twelfth Naval District, notified him that his request for delay in reporting until October, 1972 was granted if he was selected for participation in the Olympics. He was also advised that if he was not selected, he would be issued orders to active duty in August, 1972.

On July 13, 1972, the petitioner in a letter to said Commandant stated:

"For the past three years, I have been torn between my own personal beliefs as to what men can and cannot do to each other in this world of ours and a commitment and duty I owe the Navy. I regret I cannot, in good faith, accept my commission in the Navy. I have talked to Lt. O'Boyle of the Navy JAG office in Washington, D.C. and others there on a special trip I made there for that purpose. On their advice I wish to formally apply for conscientious objector status. I understand you will forward the required forms, etc. for me to begin processing a C.O. application. If you require any additional information at this time, please do not hesitate to contact me either at the above address or by phone at (206) 624–1610."

Pursuant to the provisions of Department of Defense Directive 1300.6 and Department of Navy Regulations Bupersman 1860120, the petitioner, on August 29, 1972, submitted his formal application for discharge as a conscientious objector. In said application he stated in part:

"Again the basic reason behind my decision is my belief that we must allow human life to continue. Without life, there can be no hope for a better world. In this vain [sic], I am completely opposed to any taking of life (except when mine is directly threatened and the only way to preserve it is to kill another). My moral opposition to the organized taking of life follows as a necessary consequence. If the taking of one life is criminal how much more so, the taking of thousands (the criminality of the act is not affected by whether the dead are in Viet Nam or America). But to me, the most criminal act of all is the willingness to use military force which will, I believe, inevitably put us in a position litterally [sic] a heartbeat from annihilation. Having the blood of thousands in Viet Nam on our hands is bad enough. Pursuing a course which will put the blood of the world on our hands is too much—I cannot be a part of it. I cannot accept the status quo and become a part of what I believe is this suicidal course."

A hearing on petitioner's application was held on September 8, 1972 before Lieutenant Commander Duane C. Buchholz, J.A.G.C., U.S.N.R., at Seattle, Washington. The transcript of said hearing reveals that Lieutenant Commander Buchholz questioned the petitioner at great length concerning the existence and nature of his beliefs and the sincerity thereof. In a letter, dated September 21, 1972, to the Commandant of the Thirteenth Naval District, he recommended that said application be denied on the grounds that the petitioner's views are "predicated substantially upon political and pragmatic considerations and hence do not equate to those deeply held moral or ethical beliefs in opposition to war such as would qualify him for discharge as a conscientious objector". Said application was finally denied by the Chief of Naval Personnel on November 3, 1972. In his letter of denial the Chief of Naval Personnel characterized the petitioner's contentions as inconsistent and agreed with said hearing officer's conclusions that the petitioner's "beliefs are primarily pragmatic or political". The instant petition was filed on December 6, 1972.

In reviewing the denial by military authorities of an application for discharge from military service, the sole question for the court is whether "a basis in fact" exists for said denial. Bates v. Commander, First Coast Guard District, 413 F.2d 475 (1st Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); Bouthillette v. Commanding Officer, Newport Naval Base, 318 F. Supp. 1143 (D.R.I.1970); Benway v. Barnhill, 300 F.Supp. 483 (D.R.I.1969).

The characterization by the Chief of Naval Personnel of the petitioner's assertions in support of his application as inconsistent is at its best amgibuous. If it was designed to impugn the sincerity of the petitioner, it is clearly of little weight. In United States v. McGuire, 480 F.2d 1084 (1st Cir. June 20, 1973), the Court of Appeals held at page 1086:

". . . Conjecture of insincerity is not enough. There must be 'some affirmative evidence [or] . . . something in the record which *substantially* blurs the picture painted by the registrant and thus casts doubt on his sincerity.' Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969) (emphasis added). See also Batterton v. United States, 260 F.2d 233 (8th Cir. 1958); United States v. Heidt, 445 F.2d 447 (2d Cir. 1971)."

In this case there is no affirmative evidence or anything in the record "which *substantially* blurs the picture painted by the [petitioner and] casts doubt on his sincerity". In fact, there

is substantial evidence to the contrary. In accordance with the procedures established by Bupersman 1860120, the petitioner was interviewed by Captain I. I. Kibbey, M.C. U.S.N., a psychiatrist, and by Lieutenant Commander Denis Casey, C.H.C. U.S.N., a chaplain.

In his report Captain Kibbey concluded as follows:

"As a result of my examination it is my opinion that Mr. Wright is extremely sincere in his beliefs and that his request for release is not based on characterologic disorder nor upon any psychiatric illness. Therefore I would strongly recommend approval of his application."

Lieutenant Commander Casey in his written report stated:

"In one interview with Mr. Wright I am very impressed by his sincerity, honesty and openness. It is very obvious from listening to Mr. Wright that his attitude to life and death and war and his application for classification as a Conscientious Objector is the result of much thought."

It is also clear from the record that said hearing officer, during said hearing and in his report, did not question the sincerity of the petitioner.

The basis for the denial of the petitioner's application was the conclusion of the hearing examiner and the concurrence therein by the Chief of Naval Personnel that his beliefs were not religious, moral or ethical in nature but rather were "predicated substantially upon political and pragmatic considerations". This conclusion must be evaluated in the light of the pronouncements of the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

In United States v. Seeger, supra, the Supreme Court held at page 176, of 380 U.S., at page 859 of 85 S.Ct.:

". . . The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."

In Welsh v. United States, supra, the Supreme Court at pages 339–340, of 398 U.S., at page 1796 of 90 S.Ct. restated the *Seeger* test as follows:

"What is necessary under Seeger for a registrant's conscientious objection to all war to be 'religious' within the meaning of § 6(j) is that this opposition to war stems from the registrant's moral, ethical or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions. * * *"

■■■ In my opinion, a careful review of the record in this case establishes that the petitioner's opposition to service in the military and the guiding principle in his life is and has been his sincere reverence for what he calls "the sanctity of life". Neither the fact that he expressed a particular abhorrence toward the war in Indochina nor the fact that his beliefs may have had political manifestations can properly be said to diminish or negate the sincerity of his moral and ethical beliefs or disqualify him from being classified as a conscientious objector. Bates v. Commander, First Coast Guard District, supra. Fleming v. United States, 344 F.2d 912 (10th Cir. 1965).

I find and conclude that there is no basis in fact in the record to support the finding of the Chief of Naval Personnel that the petitioner's opposition to service in the military is not based upon sincere moral and ethical beliefs about what is right and wrong, which are held by him with the strength of traditional religious convictions.

Accordingly, an order will be entered granting his petition for a writ of habeas corpus and, since he is being illegally deprived of his liberty, discharging him immediately from the custody of the United States Navy and from the custody of the respondents. Said order will

be stayed for a period of fifteen (15) days from the date of its entry to permit the respondents, if they elect to do so, to seek a further stay from the Court of Appeals for the First Circuit.